Ilir DEMIRZHIU, Petitioner,

v.

John ASHCROFT, Attorney General; Carol Jenifer, District Director; Immigration and Naturalization Service, Respondents.

Luljeta Halili, Petitioner,

v.

Immigration and Naturalization Service; John Ashcroft, Attorney General, Respondents.

Nos. 02–3753, 02–3754.

United States Court of Appeals, Sixth Circuit.

Jan. 26, 2004.

Richard A. Kulics, Birmingham, MI, Gregory R. Neidle, Dobbs and Neidle, Bingham Farms, MI, for Petitioner.

M. Jocelyn Wright, Mark C. Walters, Washington, DC, for Respondents.

Before KENNEDY and GIBBONS, Circuit Judges; and ALDRICH, District Judge.*

* The Honorable Ann Aldrich, United States        District Judge for the Northern District of

GIBBONS, Circuit Judge.

The Immigration and Naturalization Service ("INS") commenced removal proceedings against petitioners Ilir Demirzhiu and Luljeta Halili, citizens of Albania, by serving them with notices to appear. Petitioners conceded removability but filed applications for asylum, withholding of deportation, and relief under the Convention Against Torture. The immigration court denied petitioners' applications and ordered them removed from the United States to Albania. Petitioners appealed the decision of the immigration court to the Board of Immigration Appeals ("BIA"), which summarily affirmed the immigration court's order. Petitioners appeal the decision of the BIA on the ground that its summary affirmance violated due process, and in the alternative, that the findings of the immigration court are not supported by substantial evidence. For the reasons set forth below, we affirm the BIA decision.

## I.

Petitioner Demirzhiu entered the United States with a nonimmigrant visitor visa on or about July 1, 1996. His visa provided that he could remain in the United States until July 29, 1997. Demirzhiu's wife, Luljeta Halili, entered the United States at an unknown time and without any entry documents. Both Demirzhiu and Halili are natives and citizens of Albania. On August 12, 1998, the INS issued petitioners a notice to appear. The notice issued to Demirzhiu charged that he remained in the United States for longer than permitted under his visitor visa and was subject to removal under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). Halili's notice charged that she entered the United States without any valid entry documents and was subject to removal under section 237(a)(1)(A) of the INA.

On October 6, 1998, at an immigration court hearing, Demirzhiu and Halili admitted the factual allegations presented in their respective notices to appear and conceded removability. Both petitioners sought three forms of relief: asylum, withholding of removal, and relief under the Convention Against Torture. Petitioners also applied for voluntary departure. At a second hearing before the immigration court, Demirzhiu informed the court that he would be the lead respondent in the case.

On April 20, 1999, the immigration judge conducted a hearing on the merits of Demirzhiu's claims. Demirzhiu testified that in the 1970s his family was dispossessed of their land and assets and as a result, moved from Tirane to Camos, Albania. Beginning in 1990, Demirzhiu participated in demonstrations against the Albanian government. Demirzhiu testified that while he was a member of the Albanian army, he was beaten by the police, rendered comatose for two hours, and held in jail for sixteen hours following his participation in a demonstration in Tirane. He also testified that he was forced to undress and was beaten with plastic sticks and with his own shoes. Demirzhiu testified that following his sixteen-hour stay in prison, he was released to a superior officer in the army. After he was picked up by this officer, Demirzhiu, according to his testimony, jumped out of the officer's car, deserted the army, and went to live in Greece.

In April 1992, Greek police sent Demirzhiu back to Albania. Upon his return, Demirzhiu attempted unsuccessfully to reclaim his family's land. As a result of this attempt, Demirzhiu claimed that he was

Ohio, sitting by designation.

shot in the leg by the current occupiers of the land. Demirzhiu testified that he joined an organization that called for "freedom and the land," which was dedicated to returning land confiscated by the Albanian government to its former owners. Demirzhiu also testified that he joined an organization for persons who were politically persecuted. Due to his involvement in these organizations, Demirzhiu testified that he participated in a hunger strike to protest the government's failure to return land to its former owners. Because of his participation in the hunger strike, Demirzhiu claimed that he was imprisoned for approximately a year and a half, during which he testified that he was tortured. He was released from prison on March 21, 1996.

After his release, Demirzhiu participated in a demonstration concerning the Albanian election of May 1996. At this demonstration, Demirzhiu testified that a police officer, who recognized Demirzhiu from prison, began to harass him. Demirzhiu also inconsistently testified that he identified the officer to the crowd as a member of the police, and the crowd subsequently attacked the officer. Demirzhiu stated that after that incident he "received a lot of notices from the police station."

Demirzhiu then "paid extra" to receive an Albanian passport quickly. In order to receive a visa from the United States, Demirzhiu told officials at the American embassy in Albania that he had been tortured and that he worked for the airport. Demirzhiu did not actually work for the airport, but he had been told by a friend that making this false statement to the embassy would enable him to receive a visa. Demirzhiu secured a visa and left for the United States. While in the United States, Demirzhiu pled no contest and was convicted in Michigan of a misdemeanor for attempted sexual contact. Halili was convicted of retail fraud while in the United States.

At the conclusion of the hearings, the immigration judge issued an oral decision denying Demirzhiu and Halili's applications for asylum, withholding of deportation, and Convention Against Torture relief. The immigration judge also denied their petition for voluntary departure and ordered them removed from the United States to Albania on the charges presented in their notices to appear. In his decision, the immigration judge stated that he did not find Demirzhiu to be credible because Demirzhiu presented an "absurd" explanation for his escape from his superior's custody to Greece after he was released from prison, offered an identification card (purportedly of his membership in an organization for the politically persecuted) that forensic analysis indicated was a forgery, provided no corroborating evidence of injuries sustained due to his persecution, and had provided false information to the American embassy in order to secure a visa from the United States. The immigration judge then found that even if Demirzhiu's accounts were viewed as credible, he had not suffered prior torture or prior persecution that would entitle him to the requested relief from deportation. Judge Newberry further stated that even if

> one believed the respondent had suffered past torture and might suffer future torture if he were to return to the Tirane area [of Albania], the respondent was obligated to demonstrate to the Court that his torture would occur anywhere else in Albania and that has not been demonstrated. In fact, the evidence in the record indicates quite the contrary.

Demirzhiu and Halili appealed the decision of the immigration judge to the Board of Immigration Appeals. On June 5, 2002,

the BIA summarily affirmed the prior decision in a *per curiam* order stating: "The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 3.1(a)(7)."[1] Demirzhiu and Halili filed a timely notice of appeal.

## II.

The regulation governing the organization, jurisdiction, and powers of the BIA explicitly grants the Board the ability to affirm the decision of an immigration court without opinion if

█ the Board Member determines that the result reached in the decision under review was correct; [2] that any errors in the decision under review were harmless or nonmaterial; and [3] that

(A) the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation; or

(B) the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted.

8 C.F.R. § 1003.1(a)(7)(ii) (2003). The regulation also states that if the BIA determines that the decision should be affirmed without opinion, the Board shall "not include further explanation or reasoning." 8 C.F.R. § 1003.1(a)(7)(iii) (2003).

Furthermore, the BIA's summary affirmance of the immigration court decision "does not necessarily imply approval of all of the reasoning of that decision, but does signify the Board's conclusion that any errors in the decision of the Immigration Judge or the Service were harmless or nonmaterial." *Id.*

Demirzhiu asserts that the streamlined appellate review procedure used by the BIA—that is, to affirm the decision of the immigration court without stating its reasons for doing so—violates his rights under the Due Process Clause of the Fifth Amendment. Demirzhiu concedes that the regulation promulgated at 8 C.F.R. § 1003.1 authorizes the BIA to summarily affirm an immigration judge's decision. Nevertheless, Demirzhiu argues that this procedure deprives aliens of meaningful review. Demirzhiu also argues that courts reviewing the decision of the BIA "need something more than a mere adoption of the immigration judges' decision."[2] This court reviews an alleged due process violation *de novo*. *See Castellano–Chacon v. INS*, 341 F.3d 533, 552 (6th Cir.2003).

█ In considering Demirzhiu's claim, our recent decision in *Denko v. INS*, 351 F.3d 717 (6th Cir.2003), in which this court "join[ed] the recent trend of our sister circuits by concluding that the BIA's streamlining procedures do not themselves alone violate an alien's right to due process," is controlling.[3] Following *Denko*,

---

1. The regulation cited in the BIA order, 8 C.F.R. § 3.1(a)(7), has been reclassified as 8 C.F.R. § 1003.1(a)(7).

2. In support of his claim, Demirzhiu directs this panel to a series of cases that discuss BIA review procedures, but that were decided *before* the issuance of the streamlining regulation on October 18, 1999. *See* Streamlining Regulation, 64 Fed. Reg. 56135, 56141 (Oct. 18, 1999). Therefore, the cases cited in Demirzhiu's brief are not germane to our consideration of the constitutionality of the BIA's

review procedures *after* the enactment of the streamlining regulation.

3. Indeed no circuit that has considered the constitutionality of the streamlining regulation has held that it violates due process. *See Albathani v. INS*, 318 F.3d 365, 377–78 (1st Cir.2003) ("The summary affirmance scheme does ... not render the scheme a violation of due process...."); *Khattak v. Ashcroft*, 332 F.3d 250, 253 (4th Cir.2003) ("We therefore conclude that allowing summary opinions in clear cases is nothing more than a procedural

we therefore conclude that the BIA's summary affirmance of the immigration court's decision was not in violation of the Due Process Clause of the Fifth Amendment.

## III.

Demirzhiu claims that the immigration court "distorted" substantial evidence in support of his application for asylum. Therefore, we must decide whether the immigration court correctly determined that Demirzhiu had failed to sustain his burden of establishing eligibility for asylum.

In reviewing decisions of the BIA denying an application for asylum, the "Board's determination 'must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir.1998) (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). Applying this deferential standard, this court "may not reverse the Board's determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir.2001). Rather, in order to reverse the factual findings of the BIA (or those of the immigration court, if the BIA summarily affirmed the immigration judge's findings), this court must "find that the evidence 'not only supports a contrary conclusion, but indeed compels it.'" *Id.* (quoting *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir.1992)).

The INA gives discretion to the Attorney General to grant asylum to persons determined to be refugees. 8 U.S.C. § 1158(b). A refugee is an individual

> who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

8 U.S.C. § 1101(a)(42).

An alien applying for asylum bears the burden of demonstrating that he or she is a refugee. 8 C.F.R. § 208.13(a). To meet this burden, the alien must either show that he or she has "suffered past persecution"[4] or demonstrate a "well-founded fear of future persecution."[5] 8 C.F.R.

---

change that does not affect substantive rights."); *Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir.2003) ("We hold that the summary affirmance procedures ... do not violate due process."); *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir.2003) ("Since we review directly the decision of the [immigration judge] when a case comes to us from the BIA pursuant to § 1003.1(a)(7), our ability to conduct a full and fair appraisal of the petitioner's case is not compromised, and the petitioner's due process rights are not violated."); *Dominguez v. Ashcroft*, 336 F.3d 678, 680 (8th Cir.2003) (citing *Albathani* for the proposition that the streamlining regulation does not violate due process); *Falcon Carriche v. Ashcroft*, 335 F.3d 1009, 1012 (9th Cir.2003) ("We join our sister circuits in holding that streamlining does not violate an alien's due process rights."); *Mendoza v. U.S. Attorney General*, 327 F.3d 1283, 1289 (11th Cir.2003) ("[W]e

conclude that summary affirmance of Mendoza's removal did not violate any due process rights.").

4. "An applicant shall be found to be a refugee based on past persecution if the applicant can establish that he or she has *suffered* persecution in the past in the applicant's country of nationality ... on account of race, religion, nationality, membership in a particular social group, or political opinion, and is unable or unwilling to return to ... that country owing to such persecution." 8 C.F.R. § 208.13(b)(1).

5. An alien may demonstrate a well-founded fear of future persecution by showing that

> (1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particu-

§ 208.13(b). If past persecution is established, a rebuttable presumption arises that the alien has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The INS may rebut this presumption only through showing by a preponderance of the evidence either that "there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality, or ... the applicant could avoid future persecution by relocating to another part of the applicant's country...." 8 C.F.R. § 208.13(b)(1)(i). Only after an alien has demonstrated that he or she is a refugee does the immigration court consider whether to exercise its discretion in granting asylum.

In considering Demirzhiu's application for asylum, the immigration court found that Demirzhiu was not a credible witness. Specifically, the immigration court cited Demirzhiu's submission of an identification card, intended to show his affiliation with a group advocating positions in opposition to the Albanian government, that was revealed to be counterfeit. The immigration court also noted that Demirzhiu presented an "absurd" explanation for his escape to Greece after he was released from prison and provided no corroborating evidence of injuries sustained due to his alleged persecution. Therefore, besides his own testimony, which the court deemed to be lacking in credibility, the immigration court concluded that Demirzhiu failed to present

reliable evidence indicating he had suffered prior persecution. The court also noted that Demirzhiu failed to present any credible evidence that he would be tortured or persecuted upon return to Albania. As a result, the immigration court declined to find that Demirzhiu was a refugee.

■ Demirzhiu challenges the immigration court's findings by stating that the court distorted substantial evidence that he is a refugee eligible for asylum.[6] As previously noted, this court gives deference to the findings of the BIA. Outside of vague assertions that the immigration court improperly construed evidence presented at the hearing, Demirzhiu does not offer any evidence on appeal that would compel us to reconsider the determination of the immigration court. Demirzhiu has not demonstrated with credibility that he was persecuted in the past or that he is unable or unwilling to return to Albania because of persecution. Accordingly, we hold that Demirzhiu has not shown that he is a refugee and is therefore not eligible for asylum. Because we hold that Demirzhiu is not a refugee, we need not consider whether the immigration court abused its discretion in declining to grant him asylum.

## IV.

Demirzhiu asserts that the immigration court erred in not granting him withhold-

---

lar social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear. An applicant's fear of persecution must be both subjectively genuine and objectively reasonable.
*Mikhailevitch,* 146 F.3d at 389.

6. Demirzhiu alleges that the immigration court distorted evidence in four instances: (1)

improperly characterizing his journey from Albania to Greece, (2) incorrectly describing the gun allegedly used against him by Albanian land owners, (3) rendering faulty analysis of his testimony concerning his alleged assault by Albanian police, and (4) failing to give him an opportunity to rebut the INS forensic report concerning Demirzhiu's fraudulent identification card.

ing of removal. Specifically, Demirzhiu claims that the immigration court should have placed the burden of proof that he would be persecuted anywhere in Albania on the INS, instead of on him. Demirzhiu also claims that the immigration court abused its discretion by relying on a false identification card he submitted to make a determination about his credibility. This court must uphold the BIA's determination denying withholding of removal unless such a holding is "manifestly contrary to the law." *Castellano–Chacon v. INS,* 341 F.3d 533, 545 (6th Cir.2003).

In order for Demirzhiu to qualify for withholding of removal, he "must demonstrate that there is a clear probability that he would be subject to persecution if he were to return to [Albania], 'because of [his] race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (quoting 8 U.S.C. § 1231(b)(3)(A)) (second alteration in original). Furthermore, "an application seeking withholding of [removal] faces a more stringent burden of proof than one for asylum." *Mikhailevitch v. INS,* 146 F.3d 384, 391 (6th Cir.1998) (citing *INS v. Cardoza–Fonseca,* 480 U.S. 421, 431–32, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

As Demirzhiu has failed to meet his burden of proof required for a grant of asylum, he has necessarily failed to meet the "more stringent" burden of proof required for withholding of removal. Therefore, we affirm the denial of Demirzhiu's application for withholding of removal.

## V.

Demirzhiu also challenges the immigration court's decision that he was ineligible for Convention Against Torture relief. Demirzhiu argues that the immigration court incorrectly placed the burden on him to show that he would be tortured anywhere in Albania. We must uphold the BIA's determination denying Convention Against Torture relief, unless it is "manifestly contrary to the law." *Castellano–Chacon,* 341 F.3d at 552 ("This court applies the same standard of review when dealing with claims under 8 C.F.R. § 208.16(c) pursuant to the Convention Against Torture as it does when reviewing claims under 8 U.S.C. § 1231(b)(3) [withholding of removal].").

For an alien to obtain Convention Against Torture relief, "the burden of proof is on the applicant for withholding of removal [under the Convention Against Torture] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). In determining whether the applicant has met his or her burden, "the testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.16(c)(2). Demirzhiu has presented no credible evidence that would demonstrate he is likely to suffer future torture upon his return to Albania. Accordingly, we do not find the denial of Demirzhiu's claim for Convention Against Torture relief to be "manifestly contrary to the law."

## VI.

For the foregoing reasons, we affirm the decision of the Board of Immigration Appeals.

ALDRICH, District Judge, Concurring.

I join the panel's opinion in full with respect to Part I and Parts III–VI. Because I agree with Judge Gibbons that the Court's recent opinion in *Denko v. INS,* 351 F.3d 717 (6th Cir.2003), is controlling on the issue of summary affirmance (Part II), I must also concur with the result. I write separately, however, to emphasize my belief that *Denko* was wrongly decided.

The Fifth Amendment to the United States Constitution guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "As old as the first immigration laws of this country is the recognition that non-citizens, even if illegally present in the United States, are 'persons' entitled to the Fifth Amendment right of due process in deportation proceedings." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 688 (6th Cir.2002) (citations omitted). *See also Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (citations omitted); *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3rd Cir.2001) ("Despite the fact that there is no constitutional right to asylum, aliens facing removal are entitled to due process.")

The Supreme Court has explained:

We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness.

*Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945).

Reviewing courts have repeatedly emphasized the flexible nature of the right to due process. By 1976, the Supreme Court could label as a "truism" the principle that "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citations omitted).

I would reach a different result from the Court in *Denko*, pursuant to *Eldridge's* admonition that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner," *Id.* at 333 (citations omitted). Petitioners such as Demirzhiu and Denko bear the burden of proving that the BIA failed to provide them with such an opportunity. I would hold that they can carry this burden with regard to the "streamlining provisions" contained in 8 C.F.R. § 1003.1(a)(7).

The Court in *Denko* gives some weight to the proposition that due process requires next to nothing of the BIA, since the government is not required to provide aliens with appellate review of any kind. *See* 351 F.3d 717, 2003 Fed.App. 0432P at 18–19, citing *Guentchev v. INS*, 77 F.3d 1036, 1037–8 (7th Cir.1996)(Easterbrook, J.)("The Constitution does not entitle aliens to administrative appeals ... The Attorney General could dispense with the Board [entirely].") In this respect, deportation hearings resemble state criminal prosecutions, for which "it is clear that the State need not provide any appeal at all." *Ross v. Moffitt*, 417 U.S. 600, 611, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), citing *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894).

Yet the Court in *Denko* fails to recognize that, as in state criminal court, once appellate review has "become an integral part" of the system for adjudicating the rights of immigrants, such review must be provided in accordance with constitutional norms. "Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons ... from invidious discriminations." *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 100

L.Ed. 891 (1956). Once the government establishes a level of appellate review, it cannot later issue regulations which reduce that level to a sham or a mere formality.

Indeed, prior to the enactment of § 1003.1(a)(7), most courts which had occasion to consider the matter determined that the Fifth Amendment, as read through the corrective lens of *Eldridge,* compels the BIA to provide those who come before it with certain formal indicia of individualized consideration. The Third Circuit, for example, has held that to comport with due process, the BIA cannot "act as a mere rubber-stamp." *Marincas v. Lewis,* 92 F.3d 195, 202 n. 7 (3d Cir.1996). The same court later held that a petitioner such as Demirzhiu:

> (1) is entitled to "factfinding based on a record produced before the decisionmaker and disclosed to" him;
>
> (2) must be allowed to make arguments on his ... own behalf; and
>
> (3) has the right to "an individualized determination of his interests,"

*Abdulai,* 239 F.3d at 549 (citations omitted).

The phrases "meaningful review" and "individualized determination" may be elucidated by reference to a number of formulations offered by the federal appellate courts. The Ninth Circuit, for example, has required that the BIA provide "a reasoned explanation based upon legitimate concerns." Iin practice, this should be more than "a brief recitation of the facts, a statement about the great weight owed to the IJ's finding [regarding] credibility, ... boilerplate language regarding the requirements of the statute," and a single-sentence dismissal citing a single case. *Velarde v. INS,* 140 F.3d 1305, 1310 (9th Cir.1998), *citing Vargas v. INS,* 831 F.2d 906, 908 (9th Cir.1987). *Cf. Larita–Martinez v. INS,* 220 F.3d 1092, 1096 (9th Cir.2000) (single citation may occasionally suffice). The Ninth Circuit has shown

similar dissatisfaction with "conclusory or laconic statements" by the BIA. *Saldana v. INS,* 762 F.2d 824, 827 (9th Cir.1985). The Seventh Circuit, while careful "to defer to the Board" nonetheless requires "some proof that the Board has exercised its expertise in hearing a case." *Sanon v. INS.,* 52 F.3d 648, 651 (7th Cir. 1995)(Flaum, J.).

Of course, the above statements should not be interpreted to mean that, when the BIA agrees with an IJ's rationale, due process demands reinvention of the proverbial wheel. *Chen v. INS,* 87 F.3d 5, 7 (1st Cir.1996). The BIA need not parrot the IJ's reasoning on every claim, nor "write an exegesis on every contention." *Sanon,* 52 F.3d at 651 (citations omitted). Many courts have been content to affirm the BIA when it simply affirms the IJ "for the reasons set forth in that decision." *Chen v. INS,* 87 F.3d 5, 8 (1st Cir.1996), *citing Prado–Gonzalez v. INS,* 75 F.3d 631, 632 (11th Cir.1996); *Gomez–Mejia v. INS,* 56 F.3d 700, 702 (5th Cir.1995); *Urukov v. INS,* 55 F.3d 222, 227–28 (7th Cir. 1995); *Alaelua v. INS,* 45 F.3d 1379, 1382–83 (9th Cir.1995); *Maashio v. INS,* 45 F.3d 1235, 1238 (8th Cir.1995); *Gandaril-las–Zambrana v. BIA,* 44 F.3d 1251, 1255 (4th Cir.), *cert. denied,* 516 U.S. 806, 116 S.Ct. 49, 133 L.Ed.2d 14 (1995); *Panrit v. INS,* 19 F.3d 544, 546 (10th Cir.1994); *Arango–Aradondo v. INS,* 13 F.3d 610, 613 (2d Cir.1994).

Yet the "streamlining provisions" of 8 C.F.R. § 1003 do not even provide those who appeal to the BIA with such a statement of transitively-assumed rationale. Instead, the regulation unhelpfully states that affirmance without opinion, as dispensed to petitioners such as Demirzhiu, "does not necessarily imply approval of all of the reasoning of" the decision below. 8 C.F.R. § 1003.1(a)(7)(iii). Unlike the panel in *Denko,* I do not believe that this language is functionally equivalent to a

statement that the BIA has reviewed the IJ's decision, and expresses its agreement with the reasons therein. The bar set by the above-cited cases is not high; it requires only language evincing some review of the prior proceedings before affirmance. An opinion by the BIA "not necessarily" in accordance with the reasoning below, without further explanation or additional reasoning,[1] falls beneath such a bar.

Against this background, Demirzhiu's contention that the BIA's summary affirmance does not meet the minimum standards for adequately addressing his claims should succeed. The procedures laid down by § 1003.1(a)(7), as implemented in this case, "effectively remove the Board as a separate reviewing body." *Panrit v. INS*, 19 F.3d 544, 546 (10th Cir.1994).

However specifically construed, "meaningful review" must require that the BIA provide an alien facing deportation with something in the way of a reasoned, individualized opinion. By failing to so much as state that its rationale precisely matches the IJ's, the BIA has given Demirzhiu precisely nothing. Contrary to the holding in *Denko*, I would find that § 1003.1(a)(7) offends due process to the extent that it institutionalizes this approach.[2]

Because the BIA's opinion, as written, cannot satisfy even the less than demanding standards articulated by federal courts

in this area, I would hold that it constitutes a denial of Demirzhiu's right to due process under the Fifth Amendment. Because the Court in *Denko* held otherwise, I respectfully concur.

---

1. In fact, the "streamlining provisions" explicitly prohibit "further explanation or reasoning." 8 C.F.R. § 1003.1(a)(7)(iii).

2. The *Denko* opinion hints that a petitioner might successfully challenge the streamlining provisions, if (s)he presented specific evidence that the BIA did not undertake the proper review before issuing its opinion. ("We agree that a petitioner must show more. Here, Denko has provided no evidence that the Board failed to give [his] case proper review ... We will not assume such a complete break-down in the system in the absence of

tangible evidence to support such a conclusion." [*Denko* cite](citations omitted))

The facts of the case at bar demonstrate the absurdity of this implication. Demirzhiu, like *Denko*, poses his objection, on due process grounds, to a regulation which drastically limits his access to information regarding the workings and reasoning of the BIA. He argues, essentially, that § 1003.1(a)(7) *denies* him "tangible evidence" regarding the review process. Requiring him to submit such evidence therefore creates a needlessly cruel judicial Catch–22.