NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0120n.06
Filed: February 14, 2006

No. 04-4507

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TEREZE LINADI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ON PETITION FOR REVIEW OF AN** |
| | ) | **ORDER OF THE BOARD OF** |
| ALBERTO R. GONZALES, | ) | **IMMIGRATION APPEALS** |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Before: COLE, GIBBONS, and ROGERS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Tereze Linadi, a native and citizen of Albania,

appeals the denial of her claim for asylum, withholding of removal, and protection under the United

Nations Convention Against Torture. Linadi applied for asylum on the basis of political persecution,

claiming that as a member of the Democratic Party of Albania she had been beaten or attacked by

political opponents on five separate occasions. The Immigration Judge ("IJ") found that Linadi was

not a credible witness and denied her application. The Board of Immigration Appeals ("BIA")

affirmed in a short opinion. Linadi appeals to this court on two grounds.

First, Linadi claims that the BIA's streamlined review process – specifically, single-judge

review, the clearly erroneous standard for reviewing factual findings and the issuance of a summary

1

affirmance – violated her constitutional right to due process.[1]  It should first be noted that an administrative appeal to the BIA is provided by statute, not by the Constitution.  *See Denko v. INS*, 351 F.3d 717, 729 (6th Cir. 2003) (*citing Guentchev v. INS*, 77 F.3d 1036, 1038 (7th Cir. 1996)); *see also Albathani v. INS*, 318 F.3d 365, 376 (1st Cir. 2003) ("An alien has no constitutional right to any administrative appeal at all."); *Zhang v. U.S. Dept. of Justice*, 362 F.3d 155, 157 (2d Cir. 2004) (same).  Relying on this reasoning, this court has previously held that the streamlined procedures of the BIA do not violate due process.  *Denko*, 351 F.3d at 729-30.  This conclusion aligns with that of every other circuit to consider this issue.  *See Demirzhiu v. Ashcroft*, 96 F. App'x 263, 266 n.3 (6th Cir. 2004) (collecting cases).  For the reasons outlined in *Denko*, we find no violation of Linadi's right to due process in the case at hand.

Linadi also purports to argue that the IJ's findings are not supported by substantial evidence. The IJ based his adverse ruling on a finding that Linadi was not a credible witness.  Credibility determinations are considered findings of fact and are reviewed under the substantial evidence standard.  *Yu v. Aschcroft*, 364 F.3d 700, 703 (6th Cir. 2004).  The substantial evidence standard is deferential, and the decision must be upheld if it is  "'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)).  This court must affirm the IJ's determination unless "the

---

[1] Linadi also alludes to arguments that the BIA review process is impermissibly retroactive and violative of the Equal Protection Clause.  As she cites no legal authority in support of these claims and makes no effort to develop them, we will not consider them.  *See United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

evidence not only supports a contrary conclusion, but indeed compels it." *Csekinek v. INS*, 391 F.3d 819, 821-22 (6th Cir. 2004) (internal quotation marks and citation omitted). The credibility determination "must be supported by specific reasons," and "[a]n adverse credibility finding must be based on issues that go to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004).

The evidence in this case strongly supports the IJ's determination that Linadi lacks credibility. Linadi produced little evidence to corroborate the alleged incidents of political persecution, and her testimony contained a number of discrepancies that go to the very heart of her claim for asylum. The affidavit describing a 1990 incident refers only to attendance at a rally and mentions nothing that could be construed as political persecution. Despite Linadi's claims that she was beaten by police at the rally, her witness makes no reference to any attack or beating. He states only that Linadi was with him and participated in the demonstration. The only evidence of a 1998 incident is a statement from a supposed doctor – also named Linadi – that refers to a "wound in the hand." The affiant admits to not knowing whether an attack took place, but stated that "[b]ased on her words, they were wounds from being beaten." By producing this statement and testifying that she saw a doctor, Linadi directly contradicted her application for asylum, in which she stated that she did not seek medical treatment after the 1998 attack. This statement is the only evidence of any physical injury suffered by Linadi, despite her claims of being beaten three times and raped once. An alleged incident in 1999 is corroborated only by a friend's statement that she "heard screams" and "was told" that Linadi had been attacked. The friend did not witness the attack. Although

3

supposedly an eye-witness, Linadi's mother-in-law did not produce a statement or testify at the hearing.

Even had these witness statements produced better evidence of political persecution, they were unauthenticated and unverified. Although referred to as affidavits, the statements were not sworn, dated or notarized, raising severe doubts as to their authenticity. Moreover, Linadi produced no witnesses to verify her claims, despite the fact that at least two lived in the city in which the hearing was held.

Linadi further testified that she went into hiding at her brother's house to escape the government. While in hiding, she claimed to have crossed the border into Montenegro to visit an aunt. When asked why she would risk detection from border officials, Linadi first said she had bypassed border control. Only after the IJ pointed out the exit stamps on her passport did Linadi testify that she did in fact encounter officials at the border. Linadi also claimed to have been attacked a final time while in hiding. The only evidence of this incident is a statement from an Albanian cousin describing an attempted attack. This statement suffers from the same authenticity problems as the others, and Linadi could not even decide how she had obtained it. After first testifying that the original hand-written statement was mailed to her in a specific envelope, it was proven that the piece of paper, which had never been creased, could not have fit inside the envelope without being folded. Only then did Linadi remember that the statement arrived in a larger envelope. She also claimed that the larger envelope contained the smaller envelope, even though the smaller envelope was postmarked. When Linadi produced the larger envelope for the IJ, he

4

noted that it had been mailed from Greece (not Albania) and had coincidentally been ripped in the two places where the date of mailing would normally appear.

Substantial evidence also supports the IJ's finding that Linadi made no credible showing of a fear of future prosecution. She offered no evidence, other than unsubstantiated suppositions, that her alleged attackers were members of the Socialist Party that is in power in Albania. Linadi also testified that she was only a lay member of the Democratic Party – not a leader, organizer or other high profile individual that would even be noticed by the ruling party. Finally, the IJ correctly took note of the changed conditions in Albania, citing a State Department report from 2001 as evidence that "[a]ll political parties have been active in most of the country without a pattern of mistreatment, even during the dark days of 1997" and "[t]he Democratic Party currently participates in most parliamentary activity." U.S. Dept. of State, Albania: Profile of Asylum Claims and Country Conditions (May 2001). This report casts further doubt on Linadi's claims, both that she was persecuted in the past and that she has an objectively reasonable fear of persecution if forced to return.

Added together, it cannot be said that the evidence in this case "compels" a conclusion opposite of the one reached by the IJ. In contrast, substantial evidence supports the IJ's finding that Linadi was not credible, and thus, she did not meet her burden in establishing either past persecution or a well-founded fear of future persecution.

The petition for review is denied.