NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0132n.06

No.  09-4494

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 28, 2011**
LEONARD GREEN, Clerk

BI FENG LIU, aka Bifeng Liu,

    Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General

    Respondent.

ON PETITION FOR REVIEW OF
AN ORDER OF THE BOARD FOR
IMMIGRATION APPEALS

_____ /

Before:      KENNEDY and MARTIN, Circuit Judges; MURPHY, District Judge.[*]

STEPHEN J. MURPHY, III, District Judge.  In 2005, an immigration judge in Memphis entered an order to remove Bi Feng Liu from the United States.  The Board of Immigration Appeals ("Board") denied Liu's third motion to reopen his case in 2009.  This appeal is Liu's effort to seek reversal of the Board's latest denial of a motion to reopen.  Liu's concerns have changed since his last appeal in this Court insofar as he raises the specter of China's one-child policy, rather than possible retribution for his pro-democracy political activities in the United States.  But his legal arguments are not meritorious and, accordingly, we **AFFIRM** the judgment of the BIA and **DENY** the petition for review.

_____

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

Liu is a native of China. He entered the United States at Miami, Florida, without valid documentation, on October 29, 2001. A.R. 50. His wife, Chenxi Li, joined him two years later. A.R. 47.[1] Removal proceedings for Liu began on March 1, 2004. A.R. 682. Liu asked for numerous venue changes — first to New York, and then to Memphis — which were granted by the immigration courts. *Id.* The Immigration Court in Memphis ordered Liu removed in abstentia on June 29, 2005, after he failed to appear at a scheduled hearing. *Id.*

Liu asked the Immigration Court in Memphis to reopen his file on December 6, 2006. He argued that the ninety-day time limit for such a motion was excused because of changed circumstances leading to a claim of asylum, namely, (1) his involvement with the New York branch of the China Democratic Party, which agitates against China's ruling Communist Party; and (2) increased control over the press and the Internet in China. A.R. 682–83. The immigration judge denied the motion on December 18, 2006. AR 681. That decision was affirmed by the Board on January 16, 2007, and by this Court on March 24, 2009. *See* A.R. 604–07; *Bi Feng Liu v. Holder*, 560 F.3d 485 (6th Cir. 2009). While his first motion to reopen was pending on appeal to this Court, Liu filed a motion to reconsider the Board's decision, coupled with a second motion to reopen, with the Board. A.R. 458–72. Both motions were rejected. A.R. 453–54.

Liu filed a third motion to reopen — the subject of this appeal — with the Board on July 16, 2009. He argued that changed circumstances in China justified what would otherwise be a time-barred application, but the basis of his argument was completely different. Since 2006, Liu and his

---

[1] Ms. Li is involved in separate removal proceedings in Florida. A.R. 4 n.3.

wife have had three children. A.R. 52–53. He claimed that China's one-child policy, as enforced in his native Fuijan Province, would force him to submit to sterilization, or pay serious fines, as a consequence of being the father of three children. According to Liu, Fuijan Province has stepped up its enforcement of the one-child policy since 2005, including increased usage of forced abortions and sterilizations by population control officials. Upon being removed to China, Liu asserted he would have to register his children with the state, which would immediately subject him to either sterilization or a burdensome fine. A.R. 7. He argued that this was sufficient grounds for either asylum, withholding of removal, or protection under the Convention Against Torture ("CAT"). *See* Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85.

The key evidence submitted by Liu in the third motion to reopen included:

(1)     An affidavit from Liu, claiming that "recent phone contacts with [his] family and friends in China" informed him that "the government has increased the use of forced abortions and sterilization." A.R. 48

(2)     An unsigned letter, purportedly from a family planning office in Lianjiang County, Fuijan Province, claiming that Liu "should be the target for sterilization" and "must report to this office and undergo sterilization operation within one week after your arrival." A.R. 82.

(3)     Affidavits from Liu's cousin, Bisheng Liu, vouching for the authenticity of the letter from the family planning office, and claiming that he was himself sterilized in March 2009 for fathering a second child. A.R. 84–87. Supporting documentation was also attached. A.R. 88–108.

(4)     The affidavit of another "relative" who similarly claimed the authorities forcibly sterilized her after the birth of her second child, and supporting documentation. A.R. 109–33.

(5)     General background information on the one-child policy, its impact on nationals returning from the United States with Children, and the State Department's Country Report on Human Rights Practices for China ("Country Report") for 2007 and 2008. A.R. 134–442; *see also* A.R. 3–4 (cataloguing contents).[2]

After going through Liu's evidentiary file, the Board concluded that there was no credible proof of a significant change in the one-child policy as enforced in Liu's area of Fuijan Province since the order for removal was entered in 2005. A.R. 7. It gave "little weight" to the documentary evidence submitted by Liu's relatives in China — including Liu's second-hand reports of increased enforcement, the letter from the family planning office, and the affidavits from family members with supporting documentation — because the submissions were either prepared for the purposes of litigation, were not properly notarized or authenticated, or lacked indicia of reliability. A.R. 6. The Board gave the greatest weight to the official State Department reports that were either submitted with Liu's materials or administratively noticed. Relying upon the State Department's findings and previous cases presenting similar facts, the Board concluded that there was no support for the position that Liu would have to register his children in China upon his return, or that children born to him while he was residing in the United States would be treated like native-born children for one-child policy purposes. A.R. 6–7.

Following these findings, the Board denied the motion to reopen. First, it concluded that Liu had not shown changed circumstances in terms of the severity of China's enforcement of its one-

---

[2]     The Board recognized that much of this material was "similar to [materials] submitted in many other cases filed by [Liu's] counsel." A.R. 4 n.2. Additionally, the materials, "or similar materials, have already been considered by [the] Board and addressed in precedent decisions that do not support the respondent's motion." A.R. 6 (citing, *e.g.*, *in re S-Y-G-*, 24 I. & N. Dec. 247, 256 (2007); *in re J-W-S-*, 24 I. & N. Dec. 185, 192 (2007)).

child policy, nor could he claim that his decision to father children while under an order of removal could serve as grounds for reopening his case. A.R. 7. Second, even if one assumed circumstances had changed, the Board found that Liu had not demonstrated a prima facie case of possible persecution if he were returned to China. *Id.* Third, Liu's motion did not make out a prima facie case for protection under CAT, which demands "a probability of torture by or with the acquiescence of a government official." *Id.* Finally, the Board demurred from using its limited discretion to reopen Liu's case sua sponte. *Id.* This appeal followed.

## II. DISCUSSION

### A. Standard of Review

The Board's denial of a motion to reopen is reviewed for an abuse of discretion. *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 421 (6th Cir. 2007). This standard only permits reversal if the agency's action was "arbitrary, irrational or contrary to law." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004); *see also Alizoti v. Gonzales*, 477 F.3d 448, 453 (6th Cir. 2007) ("That a different decision would also have been within the Board's discretion cannot suffice to render this decision an abuse of discretion."). The standard of review on a motion to reopen reinforces the need for finality in removal decisions. *See INS v. Abudu*, 485 U.S. 94, 108 (1988) (recognizing that a liberal approach to motions to reopen would "'permit endless delay . . . by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case'" (quoting *INS v. Jong Ha Wang*, 450 U.S. 139, 144 n.5 (1981))).

B.      **Changed Circumstances**

After an Immigration Court orders the removal of an individual, he or she is permitted "only one" post-judgment motion to reopen, to be filed "not later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2); *accord* 8 U.S.C. § 1229a(c)(7)(A), (C)(i). But the limitations can be circumvented "if the basis of the motion is to apply for [asylum] and is based on changed country conditions arising in *the country* . . . to which removal has been ordered." 8 U.S.C. § 1229a(c)(7)(C)(ii) (emphasis added). Our analysis focuses on "the country" because, as we stated in our denial of Liu's first motion to reopen, "evidence of changed *personal* circumstances is insufficient to warrant reopening proceedings." *Bi Feng Liu*, 560 F.3d at 492 (emphasis added). The evidence of a change in national conditions must be "material," and "not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii). Moreover, the "motion to reopen based on changed country conditions 'cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution.'" *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (quoting *Dokic v. INS*, No. 92-3592, 1993 WL 265166, *5 (6th Cir. July 15, 1993)).

Liu's motion is the third he has filed, and he waited just over four years to file it. We therefore turn our attention to Liu's claim that circumstances have meaningfully changed in China with regards to the enforcement of the one-child policy since 2005. The gravamen of his opposition to the Board's decision is that (1) it failed to properly consider his specific evidence of changed conditions in Fuijan Province, namely, the affidavits he and his cousins gave, the letter from his

hometown population control office, and the medical records; and (2) it erroneously distinguished his evidence of changed circumstances based on the assumption that children born outside of China do not count for one-child policy purposes. We find that the Board did not abuse its discretion on either score.

We begin by examining the purported letter from the family planning office in Lianjiang County, which claims to set out Liu's fate should he return home. Typically, official records from other nations used in immigration proceedings must be either "evidenced by an official publication . . . or by a copy attested by an officer so authorized." 8 C.F.R. § 1287.6(b)(1). The parties agree that Liu's letter did not meet this requirement. In addition, according to the State Department reports the Board relied upon, Liu's particular region of China is a hotbed for forged documents that would assist an alien in obtaining asylum. A.R. 6. The Board also found that Liu could not "adequately explain[ ] why he would ask his relative to bring his situation to the attention of the family planning authorities," which further dampened the trustworthiness of his evidence. *Id.*

Liu's response to this argument is unavailing. He cites *Lici v. Mukasey*, 258 F. App'x 845 (6th Cir. 2007), as authority for the proposition that "[a]uthentication is not an issue" if "there is no evidence the report is a forgery." *Lici*, 258 F. App'x at 848. In that case, petitioners objected to the immigration judge's admission of a U.S. Embassy report discrediting claims that their daughter had been raped by secret police in Albania to exact political revenge. *Id.* at 847. But *Lici* did not impose an affirmative requirement on immigration officials to demonstrate that a particular document in the administrative record was forged. The general rule, which has particular force in cases involving parts of the world where forgery is rampant, is that an alien's failure to provide sufficient

corroborating evidence for certain facts "'can lead to a finding that an applicant has failed to meet her burden of proof.'" *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (quoting *in re S-M-J-*, 21 I. & N. Dec. 722, 724–26 (1997)); *see also* 8 C.F.R. § 1003.2(c)(1) (indicating that the moving party bears burden of proof on a motion to reopen). Liu also argues that § 1287(b)(1) is not the exclusive means of authenticating documents, but even if this were so, he asserts no alternative grounds on which the Board could have corroborated the document. These considerations were sufficient to discount the letter, given Liu's heavy burden to show a need to reopen his file.

The Board similarly gave little deference to the affidavits and documentation submitted by Liu's family members regarding increased incidence of forced abortion and sterilization in Fuijan Province. The affidavits were "not notarized and were apparently prepared for the purpose of litigation." A.R. 6. The various fee receipts and family planning operation certificates submitted to verify the claims in the affidavits were also "not authenticated and lack[ed] indicia of reliability." *Id.* In addition, the Board discounted the information because Liu's children were born in the United States, whereas his cousins' children were native-born. In a precedential decision issued in 2007, the Board found that children born abroad and brought into China do not count against the one-child policy unless they are registered as Chinese nationals, and denied relief on those grounds. *In re J-W-S-*, 24 I. & N. Dec. 185, 190–93 (2007). State Department profiles on Fuijan Province, of which the Board took administrative notice in its decision, support that assessment. Bureau of Democracy, Human Rights & Labor, U.S. Dep't of State, *China Profile of Asylum Claims and Country Conditions* ¶¶ 110–14 (May 2007), *available at* http://cdjp.org/gb/fileupload/China_May_2007.pdf.

Most courts that have considered the issue agree that American-born and native-born children are not treated in the same way for one-child policy purposes, and distinguished evidence of the sort Liu relied upon before the Board. *Xiao Jun Liang v. Holder*, 626 F.3d 983, 989–91 (7th Cir. 2010); *Feng Gui Lin v. Holder*, 588 F.3d 981, 988 (9th Cir. 2009) (finding the Board's decision in *In re J-W-S-* foreclosed the issue); *Zhou Zheng v. Holder*, 570 F.3d 438, 441–42 (1st Cir. 2009); *Liu v. Att'y Gen. of U.S.*, 555 F.3d 145, 149–50 (3d Cir. 2009); *Li Yun Lin v. Mukasey*, 526 F.3d 1164, 1165–66 (8th Cir. 2008) (per curiam). We adopted this view in an earlier, unpublished opinion as well. *Guo Ping Wu v. Holder*, 339 F. App'x 596, 600–01 (6th Cir. 2009).

Liu relies on two Eleventh Circuit cases — *Yaner Li v. U.S. Att'y Gen.*, 488 F.3d 1371 (11th Cir. 2007), and *Xue Xian Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252 (11th Cir. 2009) — in support of the opposite position. These cases are distinguishable because, on both occasions, the Board did *not* find that second-hand reports from the petitioner of stepped-up family planning practices in Fuijan Province lacked credibility. *Xue Xian Jiang*, 568 F.3d at 1258, *Yaner Li*, 488 F.3d at 1375. This evidence indicated a change in regional implementation of the one-child policy sufficient to allow the petitioners' cases to be reopened. By contrast, in Liu's case, the Board found the specific evidence submitted by Liu's family in China to be untrustworthy. It gave the evidence "little weight" in making its determination. A.R. 6; *see also Xiao Jun Liang*, 626 F.3d at 991 (relying on the incredible nature of petitioner's second-hand evidence as a reason to distinguish her case from *Yaner Li* and *Xue Xian Jiang*). To the extent the Eleventh Circuit decisions are on point, most courts have limited them to their facts, and we decline to depart from the rulings set forth in the majority of other circuits.

Having found Liu's government documents and second-hand accounts to be either unreliable or inapposite, the credible, on-point evidence in the administrative record indicates that the reproductive rights situation in China has changed very little between 2005 (the year Liu was ordered removed) and 2009 (the year the Board ruled on the third motion to reopen). *See* A.R. 6 (recognizing this and citing authorities); A.R. 295 ("During the past five years, the Chinese government has *maintained* population planning policies that violate international human rights standards."). *Compare* Bureau of Democracy, Human Rights, & Labor, U.S. Dep't of State, *2005 Country Reports: China* (Mar. 8, 2006), *available at* http://www.state.gov/g/drl/rls/hrrpt/2005/61605.htm, *with* Bureau of Democracy, Human Rights, & Labor, U.S. Dep't of State, *2008 Country Reports: China* (Feb. 25, 2009) (evidencing no meaningful changes to the "one-child policy" since 2005), *available at* http://www.state.gov/g/drl/rls/hrrpt/2008/eap/119037.htm. Furthermore, Liu cannot argue "changed circumstances" on account of fathering children after his order of removal was entered. Childbirth is a *personal* circumstance, rather than a *country* circumstance, and cannot serve as the basis for a motion to reopen. *Guo Ping Wu*, 339 F. App'x at 600; *Guo Qiang Hu v. Holder*, 318 F. App'x 348, 351 (6th Cir. 2009). We conclude that the Board's finding that there were no changed circumstances in China justifying a time- and number-barred motion to reopen was not an abuse of discretion.

## III. CONCLUSION

Liu failed to show changed circumstances in China meriting the reopening of his case, and therefore, the Board did not abuse its discretion in denying his third motion to reopen. Liu's arguments regarding his prima facie case for asylum, withholding of removal, or protection under

the Convention Against Torture need not be reached, since we agree with the Board's conclusion that

the motion to reopen is both time-barred and number-barred. We therefore **AFFIRM** the ruling of

the Board, and **DENY** the petition for review.