RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 12a0412p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

YU YUN ZHANG,

*Petitioner,*

*v.*

No. 11-4251

ERIC H. HOLDER, JR., Attorney General,

*Respondent.*

On Petition for Review from the
Board of Immigration Appeals.
No. A075 841 942.

Decided and Filed:  December 18, 2012

Before:  KEITH, CLAY, STRANCH, Circuit Judges.

_____

**ORDER**

_____

Yu Yun Zhang, proceeding through counsel, petitions this court to review an order from the Board of Immigration Appeals ("BIA" or "Board") that denied her motion to reopen her immigration proceedings based on changed country conditions. The parties have waived oral argument and this panel unanimously agrees that oral argument is not needed in this case.  *See* Fed. R. App. P. 34(a).  For the following reasons, we **REVERSE**.

Zhang is a Chinese national and citizen.  She was stopped by INS upon her entry to the United States without valid travel documents in May 2001.  In 2002, Zhang was ordered removed by an immigration judge ("IJ") and the BIA affirmed the order. However, Zhang did not leave the country; she converted to Roman Catholicism, was married in the Catholic Church, and had two children.

1

In July 2011, Zhang filed the instant motion to reopen her case based upon the claim that conditions in China had materially worsened with respect to: (1) the religious persecution of Christians in general, including Catholics; and (2) the enforcement of China's coercive population control program in her native province of Fujian. She also challenged the adverse credibility finding made during her 2002 proceedings and alleged that she was denied an opportunity to seek new legal representation at her prior removal hearing after her counsel withdrew. The Board denied the petition on all claims.

A BIA denial of a motion to reopen is reviewed for an abuse of discretion. *Liu v. Holder*, 560 F.3d 485, 489 (6th Cir. 2009). An abuse of discretion occurs if the denial was made "without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination." *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008) (internal quotation marks omitted). In general, an applicant may file one motion to reopen and it must be filed within 90 days of the entry of a final judgment. 8 U.S.C. § 1229a(c)(7)(A) & (C); *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). However, the 90-day limitation is waived if the motion to reopen is based on "changed country conditions arising in the country . . . to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii). Nonetheless, a change in personal circumstances that is unaccompanied by a change in country conditions is insufficient to reopen proceedings. *Liu*, 560 F.3d at 492; s*ee also Haddad*, 437 F.3d at 517 (holding that petitioner's "divorce was a purely personal change in circumstances that [did] not constitute changed conditions or circumstances in Jordan").

Zhang essentially concedes that her motion is untimely, but argues that her motion is not subject to the applicable time limit because it is based upon changed country conditions.

## I.      Changed Country Conditions

A petitioner seeking to reopen a hearing after the 90-day deadline must show that conditions in the country to which the petitioner will be removed have materially changed, with evidence of such change being unavailable or unable to have been discovered at the previous proceeding. *Liu*, 590 F.3d at 490 (quoting 8 U.S.C. § 1229a(c)(7)(ii)). On her religious persecution claim Zhang submitted evidence that persecution of Christians in China escalated beginning in 2002. It appears that the BIA found changed country conditions; the Board acknowledged that Zhang had presented evidence that "the Chinese Government has intensified its repression of Christian groups in recent years." AR at 4. Personal conversion to a group does not foreclose the possibility that a country can "for its own reasons, become[] more hostile towards an alien or his group" at the same time. *Zhang v. Holder*, 385 F. App'x 546, 547 (6th Cir. 2010). The separate but simultaneous changes distinguish these facts from a purely personal change in circumstances. *See, e.g., Liu*, 560 F.3d at 492 (upholding denial of a motion to reopen based upon the petitioner's "membership and participation in the [China Democratic Party] and its activities in the United States" because the motion "demonstrated a change in [the petitioner's] personal circumstances but did not demonstrate changed country conditions in China"). In the instant case, the BIA conflated the question of whether there were changed country conditions with the question of whether Petitioner had made out her *prima facie* case for asylum. *See* AR at 4 ("Upon consideration of the country conditions . . . the motion fails to set forth a *prima facie* claim.").

## II.     *Prima Facie* Claim for Asylum and Withholding of Removal

Once a petitioner establishes changed country conditions, she must then establish a *prima facie* claim, or a "reasonable likelihood" of succeeding on the merits, for obtaining asylum or withholding of removal. *Alizoti v. Gonzales*, 477 F.3d 448, 452 (6th Cir. 2007) (internal quotation marks omitted). Because her asylum claims are based on events arising after she left China, Zhang must establish a well-founded fear of future persecution; this can be based on either a likelihood of harm specifically targeted at the

applicant or a "pattern or practice" of persecuting others similarly situated.  8 C.F.R.
§ 1208.3(b)(2)(C)(iii); *see Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005).

Zhang is a Roman Catholic from the Fujian Province of China.  The BIA found
that the persecution of Christians by the Chinese Government varies by sect and region;
and additionally found that there had been recent religious persecution of Catholics in
Zhang's native Fujian Province.  AR at 4; *see also* AR at 152, 157–64, 174–80, 184–88,
192–93, 203, 205, 208.  However, the Board found this evidence unconvincing to
establish her claim because the evidence only documented persecution of Catholic
leaders rather than Catholic laymen.  AR at 4.  Though the Board explained that it found
region and sect to be relevant, it gives no explanation as to why the distinction between
leaders and laymen suddenly became pertinent.  Therefore, the denial was made
"without a rational explanation" and constituted an abuse of discretion. *Zhang*, 543 F.3d
at 854.

## III.     Evidentiary Weight of Unsworn Statements

Zhang also alleges that the BIA failed to accord proper evidentiary value to two
letters purportedly from Catholics residing in the Fujian Province, which detail religious
persecution they have experienced from the Chinese government.  Pet'r Br. at 56.  The
Board found that it could not be "certain of the reliability of the substance contained"
in the letters because "the statements were not made before a notary public in China."
AR at 4.

Under Board precedent, an applicant "may successfully reopen his or her asylum
case if, on a case-by-case analysis," there is "genuine, authentic, and objectively
reasonable evidence" to support her or his claim. *Matter of S-Y-G*, 24 I. & N. Dec. 247,
251 (BIA 2007) (footnote omitted).  Such evidence may be in the form of "affidavits or
other evidentiary material."  8 U.S.C. § 1229a(c)(7)(B).  Neither Zhang nor the
Government present binding precedent squarely on the issue of unsworn statements. The
Board has found that corroborating statements from individuals are entitled, at the very
least, to be evaluated for their evidentiary value, even when they are not notarized or
sworn. *See In re Casillas*, 22 I. & N. Dec. 154, 157, n.3 (BIA 1998) ("Relevant evidence

would include such items as . . . letters or affidavits from family, friends, or acquaintances."); *Matter of H-L-H & Z-Y-Z*, 25 I. & N. Dec. 209, 215–16 (BIA 2010) (according little evidentiary weight to personal letters submitted with an asylum application because they were "not current" and failed to show that the "individuals referenced [were] similarly situated to [the applicant]") (abrogated on other grounds by *Hui Lin Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012).

Other circuits have admonished the Board for dismissing or according little weight to a statement due to its unsworn nature. *See Zavala-Bonilla v. INS*, 730 F.2d 562, 565, 567 (9th Cir. 1984) (directing that five letters from the applicant's friends and former union members be "fully considered" because "[t]here is no evidence that the letters are false"); *Zuh v. Mukasey*, 547 F.3d 504, 509 (4th Cir. 2008) (noting that "without so much as pausing to note the unsworn nature of a document, numerous courts—including this one—have relied on [unsworn documents] when considering claims of asylum"); *see also Peci v. Holder*, 379 F. App'x 499, 505 (6th Cir. 2010) (unpublished) (considering evidence of "statements from the people who helped [the applicant] after her attack" and "statements from the family members [the applicant] lived with"). Therefore, while "sworn affidavits may often deserve greater weight than simple letters[,] . . . no statute or case law suggests that documents at immigration proceedings must be sworn." *Zuh*, 547 F.3d at 509. However, we have not addressed how to treat unsworn documents submitted as evidence. We now adopt the holdings and the reasoning of *Zavala-Bonilla* and *Zuh*.

In this case, the Board failed to evaluate the credibility of the letters at all; it simply dismissed the letters because they were not notarized in China. AR at 4. Given the documented persecution of Christians in China, it seems an arbitrarily high threshold to require that letters attesting to government abuse and admitting membership in a persecuted organization be notarized. *See Hor v. Gonzales*, 421 F.3d 497, 501 (7th Cir. 2005) ("It seems unlikely that [petitioner's] co-workers, who surely have a healthy respect for the murderous potential of [a radical Islamic group in Algeria], would submit affidavits to the U.S. immigration authorities."); *Zavala-Bonilla*, 730 F.2d at 565

(reasoning that the petitioner's co-workers, who wrote unsworn, un-notarized letters on behalf of the applicant "undoubtedly placed themselves at risk merely by writing"); *Zuh*, 547 F.3d at 509 (observing that "it seems untenable to require a sworn statement from a person . . . potentially endangered by helping [the] applicant").

Contrary cases from this circuit are not binding and, furthermore, are distinguishable. In *Liu v. Holder*, 412 F. App'x 860 (6th Cir. 2011), we affirmed the Board discrediting a purported letter from a family planning office because it needed notarization as an official business publication. *Id*. at 864. Here, the letters are personal letters unaffiliated with any institution. In *Linadi v. Gonzales*, 167 F. App'x 515 (6th Cir. 2006), we affirmed the Board discrediting witness statements that were unsworn, undated, and unnotarized; however, the Board also found that the letters were contradicted by sworn evidence and the petitioner's own application. *Id*. at 517. Furthermore, the letters at bar could be distinguished by the fact that they are sworn under religious authority. AR at 217–23, 243–47. Finally, it does not matter that the letters may have been written for the express purpose of supporting Zhang's motion to reopen. *See Zavala-Bonilla*, 730 F.2d at 565 (rejecting the inference that petitioner's "friends in El Salvador would tend to write supportive letters" to be a basis to denigrate the credibility of the letters).

While the Board does have broad discretion to weigh the evidence before it, summarily dismissing personal letters documenting government abuse and admitting membership in a persecuted organization for the simple reason that the statements were not made before a notary public constituted an abuse of discretion. We therefore hold that, absent any evidence of falsity, the unsworn nature of a document relied on provides no basis to refuse to credit it. Instead, such documents may be fully considered if they otherwise appear to be credible under the circumstances. *See Zuh*, 547 F.3d at 509; *Zavala-Bonilla*, 730 F.2d at 567.

For these reasons, we **REVERSE** and remand for further hearings on this issue.

**IV.    Remaining Claims**

We **AFFIRM** the Board's dismissal of the claim regarding the enforcement of coercive population control because Zhang failed to demonstrate that country conditions in this respect have worsened in her native province.  We also **DISMISS** Zhang's claims regarding the adverse credibility finding and the BIA's refusal to exercise *sua sponte* authority due to lack of jurisdiction.  *See* 8 U.S.C. § 1252(b)(1) (providing a thirty day time limit to file a petition to review a final removal order); *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008) (BIA determination to "forgo the exercise of its *sua sponte* authority is a decision we are without jurisdiction to review").