**Abdul Majeed KHATTAK, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–1475.

United States Court of Appeals, Fourth Circuit.

Argued: April 2, 2003.

Decided: June 13, 2003.

mann, Assistant Director, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

Before WILKINS, Chief Judge, SHEDD, Circuit Judge, and WOOTEN, United States District Judge for the District of South Carolina, sitting by designation.

Petition for review denied by published opinion. Chief Judge WILKINS wrote the opinion, in which Judge SHEDD and Judge WOOTEN joined.

## OPINION

WILKINS, Chief Judge:

Abdul Majeed Khattak petitions for review of an order of the Board of Immigration Appeals (BIA) affirming without opinion an immigration judge's order denying Khattak's applications for asylum, withholding of deportation, and suspension of deportation. We deny the petition for review.

### I.

Khattak is a Pakistani national who fraudulently entered Canada by using another individual's passport. He entered the United States in 1985 by crossing the border at Buffalo, New York without inspection. In 1988, he applied for temporary resident status under the special agricultural worker (SAW) amnesty program, which allows certain aliens who perform farm labor to obtain permanent residency in the United States. *See* 8 U.S.C.A. § 1160(a) (West 1999 & Supp.2003). Khattak claimed in his application that he had performed qualifying agricultural work as an employee of Mumraiz Ahmad from August 15, 1985, until June 6, 1986. The Immigration and Naturalization Service

**ARGUED:** Michael Christopher Richards, Ivan Yacub, Law Office of Ivan Yacub, Falls Church, Virginia, for Petitioner. Lisa Marie Arnold, Senior Litigation, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent. **ON BRIEF:** Robert D. McCallum, Jr., Assistant Attorney General, Michael P. Linde-

(INS) initially granted Khattak's status adjustment request on September 27, 1988. However, on June 21, 1990, the INS notified Khattak of its intent to terminate his temporary-resident benefits. *See* 8 U.S.C.A. § 1160(a)(3)(B)(i) (allowing the INS to revoke an alien's temporary-resident status before he obtains permanent-resident status if the INS determines that the temporary-resident status was fraudulently obtained). The notice informed Khattak that an individual named Bahauddin Khan Khattak (Bahauddin) had pleaded guilty to several federal crimes stemming from his submission of numerous fraudulent legalization applications. The notice further stated that Bahauddin had named Khattak in a sworn statement as one of the foreign nationals for whom he had prepared a fraudulent application.

On July 16, 1990, Khattak responded to the INS' notice, denying that he had received fraudulent assistance from Bahauddin in preparing his SAW application or had even known that Bahauddin was involved in falsifying applications. Khattak also submitted two sworn statements from Ahmad, dated July 11, 1990, confirming that Khattak had worked for him on the relevant dates. Despite these submissions, the legalization office (LO) found that Khattak had obtained his temporary-resident status through fraud and thus revoked Khattak's status on September 19, 1990. Khattak subsequently appealed the revocation to the Legalization Appeals Unit (LAU), which dismissed his appeal on February 17, 1993, concluding that the clear preponderance of the evidence supported the decision of the LO.

On March 12, 1997, the INS issued an order to show cause charging that Khattak was deportable because he had been admitted to the United States as a nonimmigrant and had remained longer than permitted. Khattak conceded his deportability but sought asylum, withholding of deportation, and suspension of deportation. Khattak also sought to challenge the prior revocation of his temporary-resident status, but the immigration judge refused to accept evidence relating to that issue, ruling that he lacked jurisdiction to review it. After reviewing the evidence concerning the other claims, the immigration judge found that Khattak had failed to establish entitlement to any of the relief he sought. The BIA affirmed the immigration judge's decision without opinion.

## II.

In affirming the immigration judge's decision, the BIA employed a streamlined review procedure, put into place in October 1999, that allows a single BIA member to dispose of an appeal in summary fashion upon determining

> that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
>
> (A) The issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation; or
>
> (B) The factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted.

8 C.F.R. § 3.1(a)(7)(ii) (2003); *Rules and Regulations,* 64 Fed.Reg. 56,135 (Oct. 18, 1999). Khattak contends that he relied on his entitlement to three-member BIA review and a full BIA opinion when he conceded deportability in the immigration court. Because the streamlining procedure upset these expectations, Khattak contends that it is impermissibly retroactive. We disagree.

■ A rule does not operate retroactively simply because it "upsets expectations based in prior law." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Rather, to have a retroactive effect, a statute must "attach[ ] new legal consequences to events completed before its enactment." *INS v. St. Cyr*, 533 U.S. 289, 321, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (internal quotation marks omitted). In determining whether a rule has a retroactive effect, courts should be guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Martin v. Hadix*, 527 U.S. 343, 358, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (internal quotation marks omitted).

■ Here, the streamlined review procedure does not attach new legal consequences to events occurring before it was created. The new procedure does not alter the legal standards that are applied in reviewing the merits of appellants' claims. Rather, it affects only the body that adjudicates the claims. *Cf. Landgraf,* 511 U.S. at 274, 114 S.Ct. 1483 (explaining that "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case' ") (quoting *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409 (1916)).

Relying on *Ballew v. Georgia*, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), Khattak contends that the streamlining procedures produce a retroactive effect because a smaller fact-finding body "results in a greater chance of an inaccurate result." Br. of Pet'r at 19. In *Ballew,* the Supreme Court held that trial by a five-person jury was unconstitutional, relying in part on empirical data suggesting that smaller juries do not find facts as accurately as larger ones. *See Ballew,* 435 U.S. at 232–39. Khattak suggests that the same must be true of smaller BIA panels.

Khattak offers no support for this leap in logic, however. BIA members are professionals who adjudicate immigration cases regularly, as contrasted with jurors, who are generally untrained in the law and for whom jury duty is an uncommon experience. Also, critically, the only appeals adjudicated by a single BIA member under the streamlining procedures are those that have been determined, in essence, to be the easiest cases. We simply have no reason to conclude that the size of the BIA panel makes any difference whatsoever in such appeals. *Cf. id.* at 237–38, 98 S.Ct. 1029 (noting that increased accuracy in fact finding is most critical in close cases).

Nor is the BIA's issuance of a summary opinion, rather than a detailed one, a retroactive effect. Khattak suggests that a more detailed BIA opinion would have enabled him to "develop legal strategy and determine how the Board" analyzed the applicable law. Br. of Pet'r at 15. But Khattak already has received a full explanation of the immigration judge's decision, which is essentially the decision under review. *See* 64 Fed.Reg. at 56,138 (stating that when the streamlining regulations are employed, "[f]or purposes of judicial review, . . . the Immigration Judge's decision becomes the decision reviewed"). Had the BIA issued a detailed opinion, it would have simply substituted one reviewable decision for another. We therefore conclude that allowing summary opinions in clear cases is nothing more than a procedural change that does not affect substantive rights. *See Landgraf,* 511 U.S. at 275, 114 S.Ct. 1483*

* Khattak also contends that the immigration judge improperly discredited his testimony concerning the genuineness of an alleged religious conversion that was the basis of Khat-

## III.

In sum, for the reasons set forth above, we deny Khattak's petition for review.

*PETITION FOR REVIEW DENIED*

tak's request for asylum. Khattak claimed that in 1995 he converted from the Sunni Muslim faith to the Ahmadi Muslim faith and that people practicing the latter religion face severe persecution in Pakistan. We conclude that the immigration judge's credibility determination was supported by substantial evidence. *See Figeroa v. INS,* 886 F.2d 76, 78 (4th Cir.1989).

Khattak further argues that the immigration judge erred in ruling he lacked jurisdiction to adjudicate Khattak's claim that his due process rights were violated because his temporary residency status was terminated without him being given an opportunity to confront and cross-examine Bahauddin. Khattak does not challenge the conclusion of the immigration judge that no applicable statute or regulation authorized him to consider whether Khattak was denied the right to due process when his temporary status was rescinded. And, he concedes that he was entitled to assert his due process challenge in federal district court. *See McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 491–99, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (holding that district court has jurisdiction over "general collateral challenges to unconstitutional practices and policies used by the [INS] in processing [SAW status] applications"). He nevertheless conclusorily asserts that denying him the right to make his due process challenge in the immigration court was "unconstitutional." We find no basis to support that conclusion.