**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0511n.06**
**Filed: July 20, 2006**

**No. 05-3356**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| GJERGJ DOKAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | OF AN ORDER OF THE |
| | ) | BOARD OF IMMIGRATION |
| ALBERTO R. GONZALES, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: GILMAN and GRIFFIN, Circuit Judges, and DUGGAN, District Judge.[*]

GRIFFIN, Circuit Judge.

Petitioner Gjergj Dokaj petitions for review of an adverse decision and order of the Board of Immigration Appeals ("BIA") affirming the decision of an immigration judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1] For the reasons set forth below, we deny the petition for review.

I.

_____

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1]United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85; 8 C.F.R. § 208.18.

Gjergj Dokaj, a 70-year-old native and citizen of Albania, entered the United States on October 26, 2000, as a non-immigrant visitor for pleasure with authorization to stay until September 25, 2001. However, he remained in the United States beyond his authorized stay and, thus, was issued a Notice to Appear by the Immigration and Naturalization Service ("INS") (now part of the Department of Homeland Security), charging that he was subject to removal pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). At the master calendar hearing, petitioner admitted the factual allegations contained in the Notice to Appear and conceded removability. Petitioner requested relief from deportation in the form of asylum, withholding of removal, and protection under the CAT. His application for asylum was filed with the immigration court on October 26, 2001, exactly one year after his date of entry.

At the merits hearing on October 27, 2003, petitioner testified that he became a member of the Albanian Democratic Party on March 20, 1991.[2] He participated in numerous party activities, i.e. fund raising and door-to-door solicitation for votes, but never held an official position within the party. Petitioner testified about his involvement in numerous rallies, demonstrations, and a hunger strike to protest the government and police corruption. He recounted specific demonstrations in 1991, 1994, 1996, 1997, and 2000, and claimed that his participation resulted, on ten to twelve occasions, in his arrest, detention, and beatings by the police. Petitioner testified that at least twice

---

[2]Petitioner bases his applications on his membership in the Democratic Party, one of the two main political parties in Albania, which has often taken an antagonistic stance toward the majority Socialist Party. Respondent stipulated to petitioner's family being persecuted under communist rule until 1991, when the communist regime fell.

he had to seek medical treatment for injuries sustained as a result of these beatings.[3]  Finally, in 2000, he lost hope of any improvement in the political situation in Albania and, concerned for his safety, left the country.  He obtained a passport and flew to the United States from Albania.  Petitioner's wife and one of his children remain in Albania, living there without incident since petitioner's departure.

Petitioner presented documentary evidence in support of his application, including:  a Democratic Party membership card showing admission to the party in March 1991; a letter from the chairman of the Democratic Party verifying petitioner's party membership and his participation in demonstrations in 1991; and a letter from the "Ex Politicly [sic] Persecuted Association," indicating that petitioner's family was persecuted in the 1940s and that, as a Democratic Party member, petitioner was detained in 1967, participated in protests in 1990 and again in 2000, and was subjected to police violence.  Petitioner testified that, at the time of the hearing, he was still a member of the Democratic Party.  When questioned why the letters from Democratic Party officials did not mention in detail his alleged arrests and detentions, petitioner explained that the letters were merely generalized statements regarding his membership in the party and that the Democratic Party was actually responsible for some of his arrests and, thus, would not be willing to acknowledge its involvement.

---

[3]However, petitioner provided no medical records to support these claims and offered no plausible explanation as to why such records were not produced.

A licensed psychologist, testifying on petitioner's behalf, stated that he examined petitioner on one occasion prior to the merits hearing. The psychologist conducted memory and neurological tests during the two-hour interview and concluded that petitioner suffered from post-traumatic stress disorder, presumably originating from some life-threatening situation such as the beatings allegedly incurred by petitioner in Albania. The psychologist acknowledged that some of petitioner's symptoms were similar to depression. He further testified that petitioner held a strong subjective belief that, upon his return to Albania, he would be arrested and executed.

Respondent introduced several State Department profiles and reports regarding recent political and socio-economic conditions in Albania, which underscored that the Albanian constitution provides for freedom of assembly and the right of association, and that the government generally respects these rights. One of the reports further indicated that all political parties have been active in most of the country without a pattern of mistreatment and that "Albanians have more basis for concern over crime and unpredictable armed bands and the widespread distribution of weapons purloined from the authorities." Albania: Profile of Asylum Claims and Country Conditions (May 2001).

The notes and written report of the asylum officer who first interviewed petitioner were also admitted into evidence. The asylum officer concluded that petitioner's story was not credible in light of his evasiveness and his inability to provide sufficient details regarding specific events, particularly when compared to his asylum application.

On October 27, 2003, the IJ issued an oral decision denying petitioner's claims for relief, resting his decision primarily upon an adverse credibility determination and a lack of reliable corroborating evidence. On November 25, 2003, petitioner submitted his appeal to the BIA for reconsideration of the IJ's decision denying his applications. On March 4, 2005, the BIA, in a one-page opinion, affirmed the decision of the IJ and dismissed petitioner's appeal. This timely petition for review followed.

II.

Pursuant to the INA, the Attorney General may grant asylum to an alien who qualifies as a "refugee," which is defined as one "who is unable or unwilling to return to . . . [his or her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Selami v. Gonzales*, 423 F.3d 621, 625 (6th Cir. 2005). The alien bears the burden of proving eligibility for asylum. 8 C.F.R. § 208.13(a). "To prove one's refugee status, one must present specific facts demonstrating suffering of past persecution or a well-founded fear of future persecution motivated by one of these five statutorily protected grounds." *Allabani v. Gonzales*, 402 F.3d 668, 674 (6th Cir. 2005). An applicant who establishes past persecution is entitled to a presumption of a well-founded fear of future persecution, 8 C.F.R. § 208.13(b)(1), which may be rebutted by the government upon a showing of changed country conditions. 8 C.F.R. § 208.13(b)(1)(i)(A). A well-founded fear of future persecution must be not only subjectively

genuine, but objectively reasonable as well. *See Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005); *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 389 (6th Cir. 1998).

Administrative findings of fact, including credibility determinations, are reviewed under the substantial evidence standard. *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005); *Sylla v. I.N.S.,* 388 F.3d 924, 925 (6th Cir. 2004). This standard requires that we uphold the BIA's findings as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)) (repealed and replaced by 8 U.S.C. § 1252(b)(4)(B)); *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005). Thus, under this highly deferential standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir. 2004).

III.

Petitioner challenges the merits of the BIA's decision denying his applications for asylum and withholding of removal. In doing so, petitioner takes issue with the IJ's adverse credibility determination and maintains that the IJ and the BIA erred in concluding that he did not meet his burden of establishing either past persecution or a well-founded fear of future persecution. Petitioner insists that substantial evidence shows that: (1) petitioner is part of a family who opposed the Socialist government; (2) petitioner was arrested and detained on many occasions because of his activity; (3) given the Albanian government's long history of persecuting its populace, there can be

no reasonable doubt that it has the capability of punishing petitioner; and (4) petitioner has testified that his problems started after his active opposition to governmental policies.

In denying petitioner's application for asylum, the IJ noted that the asylum officer who first interviewed petitioner found his credibility to be questionable and his behavior evasive. The asylum officer observed that, compared with the 114-page asylum application which recounted in detail petitioner's family's political history and his own political beliefs and philosophy, petitioner, during the interview, was unable to provide anywhere near the same level of detail concerning his experiences in Albania.

The IJ likewise concluded that petitioner was not credible for a number of reasons, including his vagueness regarding his political involvement; the inability to adequately articulate the political platform of the Democratic Party; an admittedly embellished asylum application purportedly prepared by his attorney; his arrival using the subterfuge that he was a visitor rather than being processed immediately as a refugee; the fact that he applied for an extension of his authorized stay before seeking asylum; and the fact that the alleged party membership card provided by petitioner contained a relatively new photograph, apparently issued in 2000, simultaneously with petitioner's arrival in the United States.

In the IJ's opinion, petitioner presented three different stories – one to the asylum officer, one to the preceding IJ who handled preliminary matters involving petitioner, and one to the IJ at the merits hearing. Rather than characterizing petitioner as a confused elderly man, a theory espoused by petitioner's counsel, the IJ concluded that petitioner was provided with a story by well-

meaning individuals and, when it was necessary for him to provide extra details, his story changed.

The IJ found it implausible that the Albanian police would repeatedly detain and severely beat petitioner in light of the fact that he was only a member of the Democratic Party and not an active party leader, and these occurrences were not corroborated by his fellow Albanians or party officials who submitted letters on his behalf. His testimony indicates that he assumed a largely peripheral role in Democratic Party activities. In addition, the IJ concluded that the documentary evidence provided by petitioner failed to provide a basis for the number of his alleged arrests and detentions; rather, the documents and letters are "quite general in nature, referring to mostly [events] that occurred [in] 1990 and before."

The IJ noted that the State Department reports submitted by respondent indicated that fundamental human rights and freedoms are currently unrestrained in Albania, and that political parties have been active in most of the country without a pattern of mistreatment.[4] The IJ acknowledged that these reports did not paint an optimistic picture of conditions in Albania, particularly from an economic standpoint, and that immigration is essentially a universal goal; nonetheless, the IJ determined that the reports were inconsistent with petitioner's claims that he suffered and will suffer persecution due to his political activities. Instead, these reports indicated that Albanians have more basis for concern from simple criminals. The IJ also noted that the high

---

[4]State Department reports "are generally the best source of information on conditions in foreign nations." *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (quotation omitted).

number of forged documents emanating from Albania hinder the adjudication of asylum claims originating from that country.

Finally, the IJ discounted the examining psychologist's diagnosis of post-traumatic stress disorder, given the brevity of the examination, the fact that the psychologist accepted petitioner's version of events without a critical eye, and evidence that other factors, including petitioner's age, medical condition, and the death of his son, supported an alternative diagnosis of depression.

Based on the above evidence, the IJ found that petitioner was not credible and that he failed to establish either politically motivated past persecution or a well-founded fear of future persecution that would warrant a finding of statutory eligibility for asylum.

Under the circumstances, we conclude that there is substantial evidence supporting the IJ's adverse credibility determination and, ultimately, the IJ's and BIA's decisions denying petitioner's claims. An IJ's finding of incredibility will be upheld when there are major inconsistencies going to the heart of the applicant's claim, and an IJ's findings must be supported by specific reasons. *See Yu,* 364 F.3d at 704. Here, substantiated discrepancies in petitioner's application, testimony, and documentary evidence support the IJ's determination. The evidence does not compel a contrary conclusion.

"Because an alien must meet a higher burden in establishing a right to withholding of removal than in demonstrating asylum eligibility, an alien who fails to qualify for asylum necessarily does not qualify for withholding of removal." *Singh*, 398 F.3d at 401. Petitioner's claim for

withholding of removal was therefore also properly foreclosed by the IJ and BIA. *See generally* 8

C.F.R. § 208.16(b); *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004).

IV.

Petitioner also claims that he was denied his Fifth Amendment due process rights by the

streamlining regulations for asylum appeals to the BIA that were implemented by the Attorney

General in 1999 to address the backlog of cases. These regulations allow adjudication of appeals

by single BIA members and affirmance of IJs' decisions without opinion under specified

circumstances.[5] *See* 8 C.F.R. § 1003.1(e)(4) (2006). As respondent correctly notes, this court and

the courts of our sister circuits have universally upheld the viability of these streamlining regulations

and have consistently concluded that the regulations do not violate an alien's due process rights in

the manner suggested by petitioner. *Denko v. I.N.S.*, 351 F.3d 717, 730 (6th Cir. 2003). *Accord,*

*Albathani v. I.N.S.*, 318 F.3d 365, 376-79 (1st Cir. 2003); *Khattak v. Ashcroft*, 332 F.3d 250, 253

(4th Cir. 2003); *Soadjede v. Ashcroft*, 324 F.3d 830, 832-33 (5th Cir. 2003); *Georgis v. Ashcroft*, 328

F.3d 962, 967 (7th Cir. 2003); *Dominguez v. Ashcroft*, 336 F.3d 678, 680 (8th Cir. 2003); *Falcon*

*Carriche v. Ashcroft*, 350 F.3d 845, 848 (9th Cir. 2003); *Mendoza v. U.S. Attorney Gen.*, 327 F.3d

1283, 1289 (11th Cir. 2003). Petitioner's argument is without merit.

In sum, for the foregoing reasons, we dismiss the petition for review and affirm the judgment

of the Board of Immigration Appeals.

---

[5]It should be noted that this is not, as petitioner contends, an instance of summary affirmance; the BIA issued a one-page opinion affirming the IJ.