NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0779n.06
Filed: September 7, 2005
File Name: 05a0779n.06
Filed: September 7, 2005

No. 04-3649

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMIL MIRZA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW FROM |
| | ) | THE BOARD OF IMMIGRATION |
| ALBERTO R. GONZALES, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

Before: BOGGS, Chief Judge; SUTTON, Circuit Judge; RICE, District Judge.[*]

SUTTON, Circuit Judge. Jamil Mirza seeks review of a decision by the Board of Immigration Appeals (BIA) denying his motion to reopen deportation proceedings. Because the BIA has offered no explanation, and appears to have no explanation, why the recent death of Mirza's father for speaking out on behalf of Assyrian Christians does not amount to new evidence that makes it "worthwhile to develop the issues further at a plenary hearing on reopening," *Matter of S-V-*, 22 I.&N. Dec. 1306, 1308 (BIA 2000), we conclude that the BIA abused its discretion in denying the motion to reopen.

---

[*] The Honorable Walter Herbert Rice, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

I.

Mirza is an Assyrian Christian. He left his native Iraq in 1991 and entered the United States on December 29, 1995. On May 7, 1996, the Immigration and Naturalization Service commenced deportation proceedings against him. *See* 8 U.S.C. § 1227. In response, Mirza submitted an application for asylum and withholding of deportation based on a fear of persecution on account of his religion, nationality and political opinion. At his November 18, 1996, deportation hearing, the immigration judge (IJ) denied Mirza's application, finding that he was not credible, that he had not suffered past persecution and that he did not harbor a well-founded fear of future persecution. Mirza appealed to the BIA, which affirmed the IJ's denial of Mirza's application on March 12, 2002. Mirza did not seek review of this decision.

On December 9, 2003, however, he filed a motion to reopen his case based on changed country conditions and special circumstances. In support of the motion, Mirza offered two photographs and six affidavits relating to the September 22, 2003, killing of his father in Iraq. The affidavits were all to the effect that Mirza's father had been killed because of his religion and because of his public complaints about the treatment of Assyrian Christians in Iraq. In addition to the affidavits and photographs regarding his father's murder, Mirza offered 21 news articles, which contained information about increased hostilities against Assyrian Christians in Iraq.

The BIA denied Mirza's motion to reopen. In full, the BIA's explanation for denying the

motion reads as follows:

> This matter was last before the Board on March 12, 2002, when we dismissed [Mirza's] appeal from an Immigration Judge's November 18, 1996, decision denying his applications for asylum and withholding of deportation. On December 9, 2003, [Mirza] filed a motion to reopen with the Board. The motion to reopen will be denied.
>
> [Mirza] has filed a motion to reopen pursuant to 8 C.F.R. § 1003.2(c)(3)(ii) in which he requests that the record be remanded to the Immigration Judge to reexamine his claim based on emergent circumstances arising in his native Iraq. A motion to reopen under 8 C.F.R. § 1003.2(c) will not be granted unless the movant establishes a prima facie case of eligibility for the underlying relief sought. As a general rule, moreover, we will reopen deportation proceedings on the basis of new evidence only where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening. We find that the new evidence submitted by [Mirza] in connection with his motion to reopen does not satisfy these exacting standards.
>
> To establish prima facie eligibility for asylum or withholding of deportation on a motion to reopen, [Mirza] must at a minimum demonstrate that current country conditions in Iraq, when considered in conjunction with his prior claim, gives him an objectively reasonable fear of persecution in Iraq. Although the new evidence presented by [Mirza] continues to show that the current conditions in Iraq are turbulent, [Mirza] has not adequately demonstrated that his situation is appreciably different from the dangers faced by all his countrymen.

BIA Op. at 1 (quotations and citations omitted). Mirza timely sought review of this order.

II.

A motion to reopen requires the BIA to consider new evidence only when it "is material, was not available, and could not have been discovered or presented at the previous hearing." *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004). In assessing whether such evidence warrants the reopening of an immigration hearing, the BIA asks whether the new evidence, when considered in combination with evidence already in the record, makes it "worthwhile to develop the issues further at a plenary hearing on reopening." *Matter of S-V-*, 22 I.&N. Dec. at 1308; *see Matter of Sipus*, 14 I.&N. Dec. 229 (BIA 1972). The BIA will not grant the motion if the applicant cannot make a prima facie showing of eligibility for the relief sought in his original application. *INS v. Abudu*, 485 U.S. 94, 104 (1988); *Yousif v. INS*, 794 F.2d 236, 241 (6th Cir. 1986).

We review the BIA's denial of a motion to reopen for an abuse of discretion, *INS v. Doherty*, 502 U.S. 314, 323 (1992), which occurs when the BIA's decision is "without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group." *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982) (per curiam). The BIA's "denial of [a motion to reopen] may be affirmed only on the basis articulated in the decision and this Court may not assume that the [BIA] considered factors that it failed to mention in its opinion." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004). "[A]n agency opinion that fails to build a rational bridge between the record and the agency's legal

- 4 -

conclusion cannot survive judicial review." *Mengistu v. Ashcroft*, 355 F.3d 1044, 1047 (7th Cir. 2004).

In our view, the BIA's decision does not "build a rational bridge between the record and the agency's legal conclusion." *First*, the murder of Mirza's father on September 23, 2003, readily establishes that the application to reopen is premised on evidence that was "not available" and "could not have been discovered or presented at the previous [November 18, 1996,] hearing." *Harchenko*, 379 F.3d at 410.

*Second*, the murder of Mirza's father qualifies as "material" new evidence, *see id.*, that makes it "worthwhile to develop the issues further at a plenary hearing on reopening." *Matter of S-V-*, 22 I.&N. Dec. at 1308. Mirza's application and testimony, it is true, allege a number of different sources for his fear of persecution. But one of the premises of Mirza's original asylum application was that he feared persecution on the ground that he was an Assyrian Christian who had been persecuted not only on the basis of his religion but also on the basis that he was perceived as politically active on issues relating to his religion and heritage. IJ Op. at 4 (fear of persecution based on religion and political opinion); *id*. at 7 (accused of raising funds for Assyrian party). According to the affidavits presented in connection with the motion to reopen, Mirza's father was murdered because he "worked to change the way Assyrian Christians were treated in Iraq." JA 134. *See also* JA 132 ("Jamil's father was killed because he was an Assyrian Christian in Iraq."); JA 133 ("[Mirza's father] was murdered because he felt that Assyrian Christians were mistreated in Iraq and repeatedly stated so."); JA 135 ("Jamil's father was killed because he was an Assyrian Christian that

defended his people."); JA 136 ("[Mirza's] father was targeted and eventually killed because he openly spoke out for the Assyrian Christians in Iraq."); JA 137 ("[Mirza's] father's murder was a result of the opinions he held on the well-being of Assyrians Christians in Iraq.").

The killing of Mirza's father bolsters the credibility of his claim that he cannot return to Iraq for fear of persecution due to the perception in Iraq that he is politically active. *See* JA 262 (while in college Mirza was thrown in jail and questioned for, among other things, collecting funds for "Assyrian parties"); JA 274 (feared persecution because of his "speech and [ ] belief," and the "express[ion] [of his] opinion in that regard"); JA 412 (indicating that his family had been threatened for being Assyrian Christians). The new evidence, accordingly, is "material," *Harchenko*, 379 F.3d at 410, and makes it "worthwhile to develop the issues further at a plenary hearing on reopening," *Matter of S-V-*, 22 I.&N. Dec. at 1308.

*Third*, despite this connection between the old evidence and the new, the BIA did not address the murder of the father in ruling on Mirza's motion. The opinion addressed only the evidence about increased hostilities against Assyrian Christians contained in the 21 news articles. By themselves, we agree, the articles fail to show that the BIA abused its discretion in concluding that they demonstrate only generally "turbulent" conditions in Iraq and that Mirza's situation is not "appreciably different from the dangers faced by all his countrymen." BIA Op. at 1. As a review of the articles reveals, they do no more than demonstrate continued turbulence in Iraq, *e.g.*, JA 74, 115 (indicating that crime is on the rise), or detail violence directed against subgroups of Christians

or Assyrian Christians to which Mirza does not claim or cannot claim membership, JA 69, 74 (Christian children, particularly girls, targeted for kidnaping); JA 80, 83, 94 (Christian shop-owners targeted for violence because they sell alcohol); JA 74 (evangelical Christians targeted for political reasons); JA 74, 110 (Christian translator who was helping the American army was killed). The BIA did not abuse its discretion in concluding that neither type of evidence suffices to support an objectively reasonable fear of persecution. *See, e.g.*, *Harchenko*, 379 F.3d at 410 ("[A]n alien filing a motion to reopen based on changed country conditions cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution.") (quotations omitted); *Yousif*, 794 F.2d at 244 (Assyrian Christian in Iraq "failed to present credible evidence to support his claim that he is being singled out for persecution"); *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir. 1997) (requiring that evidence of persecution refer to more than "acts of random violence").

But this reasoning provides no explanation, rational or otherwise, for rejecting Mirza's most compelling and least generalized argument. Far from relying only on generalized evidence about "turbulent" conditions in Iraq, Mirza presented the agency with a particularized piece of evidence that not only cut close to home but also bolstered his own application. Mirza shares his father's faith and, like his father, is perceived as politically active on topics touching upon his heritage. In the aftermath of the murder of Mirza's father because of his outspoken efforts to advance the cause of Assyrian Christians, it seems difficult, if not impossible, to conclude that Mirza's situation is not "appreciably different from the dangers faced by all his countrymen." BIA Op. at 1. The point of

Mirza's motion and the effect of the six attached affidavits was to show just the opposite. *See Akhtar v. Gonzales*, 406 F.3d 399, 405–06 (6th Cir. 2005) (recognizing that membership in a family targeted for persecution may suffice to establish a well-founded fear of persecution as long as there is evidence beyond mere family membership tying the applicant family member to the persecution).

*Fourth*, while the Attorney General correctly notes that Mirza must establish prima facie eligibility for asylum or withholding of deportation before his motion to reopen may be granted, *see Abudu*, 485 U.S. at 104; *Yousif*, 794 F.2d at 241, his application satisfies that standard. To establish a prima facie claim of a well-founded fear of persecution, *see* 8 C.F.R. § 208.13(b)(2), Mirza needed to show that current country conditions in Iraq, when considered in conjunction with his prior claim, established an "objectively reasonable" and "subjectively genuine" fear of persecution. *See Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004). The recent killing of a member of Mirza's immediate family—his father—for reasons paralleling his own fear of persecution, taken in combination with the other evidence offered by Mirza at his original hearing and in his motion to reopen, together demonstrate an objectively reasonable fear of persecution. *See Akhtar*, 406 F.3d at 405–06; *Lopez-Soto v. Ashcroft*, 383 F.3d 228, 235 (4th Cir. 2004).

The new evidence also supports the "subjectively genuine" nature of his fear of persecution. While the IJ originally considered Mirza's testimony incredible, the IJ has not had an opportunity to assess the bona fides of Mirza's fear in the aftermath of his father's death. And we have little trouble concluding that the murder of one's father for the same previously identified reasons for

fearing for one's own safety makes out a prima facie showing of "subjectively genuine" fear of future persecution.

## III.

For these reasons, we grant the petition for review and remand to the BIA to reopen Mirza's deportation proceeding.