NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0402n.06

No. 12-3541

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Apr 22, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| AMADOU M. SOW, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED |
| v. | ) | STATES BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE:  NORRIS, COOK, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Petitioner Amadou Sow was charged with removability by the Department of Homeland Security.  He applied for asylum, withholding of removal, and protection under the Convention Against Torture.  An immigration judge found him not credible because his testimony was inconsistent with his corroborating documents.  She therefore denied Sow's applications and ordered him removed.  Sow appealed this order to the Board of Immigration Appeals, which found no clear error in the immigration judge's adverse credibility finding and dismissed Sow's appeal.  Because we find that substantial evidence supports the Board's decision, we deny Sow's petition for review.

## I.  BACKGROUND

Sow, a citizen of Mauritania (a country in West Africa), was admitted to the United States on a tourism visa on June 24, 2001, and was authorized to remain until December 24, 2001.  He filed

an application for asylum on December 17, 2001. When he did not appear on time for a scheduled asylum interview (Sow says a traffic accident delayed him), the Department of Homeland Security charged him with removability and served him with a notice to appear before an immigration judge.

Sow appeared before an immigration judge on July 5, 2005. He conceded removability, and the judge designated Mauritania as his country of removal. Sow requested asylum, withholding of removal, and relief under the Convention Against Torture. His removal hearing was continued until July 28, 2010.

At his hearing, Sow testified to suffering past persecution due to his ethnicity (he is black and a member of the Fulani ethnic group) and political activities. He said that in 1992 he joined a political organization known as the Union of Democratic Forces (UFD). The UFD opposed the regime of the then-leader of Mauritania, President Taya. Sow served as a party secretary, hosting party meetings at his house about once every three months.

Following President Taya's election in 1992, Sow participated in a UFD demonstration formed to protest the election. Armed police (white Moors) showed up, threw teargas into the gathering, and arrested Sow. Sow was detained at the police station for seventy-two hours. During that time he was kept in a windowless cell with seven others. The police interrogated him at three o'clock every morning, trying to make him explain why he was demonstrating against the election and identify the UFD leaders. The police punched him on his right hand, called him a "nigger," burned his hand with candles, injured his knees by making him crawl, beat his back with a truncheon, and stepped on his back. His party leaders finally procured his release.

After his release, Sow continued to participate with the UFD and host party meetings at his home every three months. After each meeting the police summoned him to the police station. They never again physically harmed him, but they would threaten him, call him names and curse him, and detain him from eight to twelve hours. This pattern of meetings, summons, and threats lasted from 1992 until Sow left Mauritania in 2001.

Sow was asked whether any of his family members have had problems with the Mauritanian authorities since he left the country. He stated that after he left, the police kept going to his house and asking for his whereabouts. In December 2007, his wife's leg was broken during a police visit.[1] Although he had spoken to his wife while she was in the hospital, Sow was unable to describe the details of the incident but speculated that his wife became angry, "maybe they had an argument or something," and "maybe she was pushed and she got hurt."

Sow testified that he could not return to Mauritania because of problems with the police and the government. If he returned, he would continue to participate in the UFD and oppose the government, and the police would continue harassing him. Sow also stated that he was fired from his job while he was waiting for his flight to the United States. In his amended application for asylum, Sow intimated that political considerations prompted his firing.

After his direct examination, Sow was subjected to a vigorous cross. He had submitted several corroborating documents to the immigration judge, including his UFD membership card, an

---

[1]Sow's wife and nine children remained in Mauritania. During direct examination, Sow testified that his wife's hand was broken. However, during cross-examination he said her leg was broken. Letters from Sow's sister, wife, and mother identify his wife's leg as the afflicted appendage.

employment termination letter from the mining company he had worked for in Mauritania, and a letter from the UFD describing the persecution he allegedly suffered. Cross-examination revealed significant discrepancies between Sow's testimony and the very documents he submitted to corroborate it.

Sow was repeatedly asked about the date he first joined the UFD, and he repeatedly stated that he joined in December 1992. But this testimony conflicted with Sow's UFD membership card, which said he joined the party on August 10, 1992.

Sow's testimony also conflicted with the letter from his employer. Sow stated that he was fired due to his political activities. But the letter says he was terminated for an unjustified absence from work.

Most significantly, Sow's testimony conflicted with the letter from the UFD, dated August 1, 2001. Sow stated that the UFD regional president wrote the letter on his behalf to aid Sow in his asylum application, and the letter was delivered to him in the United States by a young man from his village sometime in 2001 or 2002. Sow said he believed that the letter confirmed his statements about the 1992 arrest and subsequent harassment by the police. But the letter references none of the events Sow testified to. Instead, the letter says that Sow was arrested and tortured in April 1989, that his house was burned in May 1989, that he was arrested and interned in concentration camps between December 1990 and February 1991, and that harassment by a racist superior forced him to quit his job.

These statements in the letter directly conflict with Sow's testimony that he had never been arrested before December 1992. Sow's testimony referenced none of the events described in the

letter, and the letter corroborated none of Sow's testimony. When confronted with the discrepancies between the letter and his testimony, Sow admitted that the statements in the letter were not accurate.

After hearing Sow's testimony and considering the documents he submitted, the immigration judge rendered an oral decision denying Sow's applications for asylum, withholding of removal, and protection under the Convention Against Torture, and ordering him removed to Mauritania. She found Sow incredible, pointing to the inconsistencies between his testimony and his corroborating documents, some implausibilities in his testimony, and his evasiveness during the hearing. Since Sow was not credible, the immigration judge found that he did not meet his burden of proof to establish eligibility for asylum. However, she also noted that if she had found him credible, she would have granted him asylum due to his past persecution and a well-founded fear of future persecution.

Sow appealed the immigration judge's decision to the Board of Immigration Appeals, which issued a decision on April 9, 2012. The Board addressed only Sow's applications for asylum and withholding of removal since he did not meaningfully address on appeal the immigration judge's denial of his application for protection under the Convention Against Torture. It found no clear error in the immigration judge's adverse credibility determination and focused in particular on the inconsistencies between Sow's testimony and the letter from the UFD. Based on the adverse credibility finding, the Board agreed with the immigration judge that Sow had failed to meet his burdens of proof for asylum and withholding of removal. Accordingly, the Board dismissed his appeal. Sow timely petitioned this Court for review of the Board's decision.

## II. ANALYSIS

Applicants for asylum and withholding of removal bear the burden of proof to establish eligibility for these forms of relief.[2] *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009). To prove his eligibility for asylum, Sow needed to establish that he qualified as a refugee, that is, that he is unable or unwilling to return to Mauritania because of past persecution or a well-founded fear of future persecution. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b); 8 C.F.R. § 208.13(b); *Gilaj v. Gonzales*, 408 F.3d 275, 283 (Per Curiam). To prove his entitlement to withholding of removal, Sow needed to establish that he was persecuted in the past or that it is more likely than not that he would be persecuted upon his return to Mauritania. 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(b); *Vincent v. Holder*, 632 F.3d 351, 354-55 (6th Cir. 2011).

Where, as here, the Board issues a separate decision instead of just summarily affirming the immigration judge's decision, "we review the [Board's] decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We also review the immigration judge's decision "[to] the extent the [Board] adopted the immigration judge's reasoning." *Id.* We apply a substantial evidence standard of review to the factual findings of both the Board and the immigration judge, including their adverse credibility findings. *Id.*; *Mapouya v. Gonzales*, 487 F.3d 396, 406 (6th

---

[2]We lack jurisdiction to review the immigration judge's denial of Sow's application for protection under the Convention Against Torture. Sow did not challenge this denial in his brief before the Board of Immigration Appeals, and therefore failed to exhaust his administrative remedies. *See* 8 U.S.C. § 1252(d)(1); *Hasan v. Ashcroft*, 397 F.3d 417, 419-20 (6th Cir. 2005).

Cir. 2007). Under this standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Since Sow filed his initial asylum application before the effective date of the REAL ID Act of 2005, "an adverse credibility finding must be based on issues that go to the heart of [Sow's] claim." *Sylla v. I.N.S.*, 388 F.3d 924, 926 (6th Cir. 2004); *see also Abdurakhmanov v. Holder*, 666 F.3d 978, 982 n.3 (6th Cir. 2012). "If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Sylla*, 388 F.3d at 926 (quotations omitted). Furthermore, "[w]hile an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons." *Id.*

We easily find that substantial evidence supports the Board's adverse credibility finding in this case. The Board based its adverse credibility finding on the inconsistencies between Sow's testimony and the documents he submitted to corroborate his testimony. Sow's testimony conflicted significantly with these documents. We might be able to agree with Sow that the discrepancy between the date he said he joined the UFD and the date written on his party membership card do not go to the heart of his claim. We might even be able to agree that the difference between Sow's statement that he was terminated from his employment due to political considerations and the letter that said he was terminated for an unjustified absence is relatively insignificant. However, we cannot agree that the inconsistencies between Sow's testimony about the persecution he suffered and the events chronicled in the letter from the UFD do not go to the heart of his claim.

Sow's applications for asylum and withholding of removal are both based on the persecution he suffered in Mauritania, and the persecutive events he described are completely different from the

events referenced in the letter. Sow had more than enough time to discover the inaccuracies in the letter. He has never adequately explained why he submitted a letter as corroborating evidence when that letter was completely inaccurate. The only reasonable explanation is that he did so to enhance his claim of persecution.

Because we find that substantial evidence supports the Board's finding of adverse credibility, we agree with the Board that Sow did not meet his burden to prove eligibility for either asylum or withholding of removal.

### III. CONCLUSION

We deny Sow's petition for review.