NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0897n.06

No. 12-4265

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Oct 17, 2013*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| EL ABASSE SIDI MOHAMED, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW OF |
| | ) | ORDER OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER JR., Attorney General | ) | OPINION |
| | ) | |
| Respondent. | ) | |

Before:  ROGERS, STRANCH, and DONALD, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge.  El Abasse Sidi Mohamed, a native and citizen of Mauritania, filed a petition for review of the Board of Immigration Appeals' denial of his motion to reopen his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  The BIA denied Sidi Mohamed's motion because he failed to establish a change in country conditions in Mauritania that was material to his application.  The BIA did not abuse its discretion in denying the motion. We DENY the petition for review.

## I.  BACKGROUND

Sidi Mohamed applied for asylum in 1997 and again in 2003 on the grounds that he had been persecuted in Mauritania because of his work there as an anti-slavery political activist, and that he would be persecuted if returned.  His asylum applications and testimony set out the following facts. He and his family had been slaves in Mauritania.  His father and brothers escaped their master but

-1-

were later arrested and died in prison. In 1991, Sidi Mohamed also escaped and began working as an anti-slavery activist with the organization SOS Slavery. In November 1992, he was arrested after he was seen talking to slaves about SOS Slavery. In custody, he was beaten repeatedly, interrogated about SOS Slavery, and required to perform forced labor. In November 1993, Sidi Mohamed escaped to Mali and later worked in the Ivory Coast, Benin, and Gabon, only returning for a few weeks to Mauritania, where he was again arrested and again escaped. While in Benin, Sidi Mohamed purchased a fake Beninese passport on the black market, which he used to travel to the United States in 1996.[1]

Sidi Mohamed entered the United States on December 28, 1996 on a tourist visa, claiming Beninese citizenship and using a Beninese passport. He timely filed his first application for asylum, withholding of removal, and relief under CAT in April 1997. At a preliminary immigration hearing in October 2002, he conceded his removability. He subsequently filed a second asylum application in February 2003. In July 2004, an immigration judge (IJ) denied his application for asylum or withholding of removal and ordered him removed to Mauritania, or, in the alternative, Benin. In December 2005, the Board of Immigration Appeals (BIA) denied his appeal of the IJ's decision. The BIA also subsequently denied both his appeal of the IJ's decision denying voluntary departure—in which the IJ found that he had given false testimony—and his motion to reopen based on changed country conditions in Mauritania resulting from a 2008 coup. Sidi Mohamed filed in

---

[1]Many of the experiences recounted by Sidi Mohamed as his own are very similar to, and in some cases repeat word for word, the accounts provided by others of their struggles and mistreatment in Mauritania from 1988 to 1991. AR. 795–839. Those accounts appear in the excerpts of a report titled Mauritania's Campaign of Terror that was written by Human Rights Watch and provided by Sidi Mohamed as an exhibit to his 1997 asylum application. *Id*.

this court a petition for review of the denial of his application for asylum or withholding of removal and the denial of his application for voluntary departure. He filed a second petition for review of the denial of his motion to reopen. *Mohamed v. Holder*, 443 F. App'x 965, 966–67 (6th Cir. 2011). We denied both petitions. *Id.*

In July 2012, Sidi Mohamed filed a motion to reconsider a prior adjustment of status denial and a motion to reopen based on changed conditions in Mauritania. In October 2012, the BIA denied both motions as untimely and number-barred. In doing so, it denied a waiver of the filing deadline and the number-bar for motions to reopen or reconsider, finding that Sidi Mohamed failed to establish a material change in conditions in Mauritania since his 2004 hearing. In December 2012, Sidi Mohamed filed a petition for review of the denial of his motion to reopen with this Court.

## II. STANDARD OF REVIEW

We review a BIA denial of a motion to reopen or reconsider for abuse of discretion. *Yu Yun Zhang v. Holder*, 702 F.3d 878, 879 (6th Cir. 2012); *see* 8 C.F.R. § 1003.2(a). "An abuse of discretion occurs if the denial was made without a rational explanation, inexplicably departs from established policies, or rests on an impermissible basis such as invidious discrimination." *Zhang*, 702 F.3d at 879 (internal quotation marks omitted). This requires that "[a] reviewing court . . . possess a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (internal quotation marks omitted). An appellant to the BIA "bears a heavy burden" on a motion to reconsider or reopen, and the BIA has "broad discretion" in reviewing a motion to reopen. *Alizoti v. Gonzales,* 477 F.3d 448, 451 (6th Cir. 2007) (citing *INS v. Doherty,* 502 U.S. 314, 323 (1992)). "We will not reverse the Board simply because we would have decided the

matter differently in the first instance." *Hyzoti v. Holder*, 517 F. App'x 354, 3 (6th Cir. 2013); *see Alizoti*, 477 F.3d at 453. The BIA's decision must be clear and unambiguous as this court may only affirm denial of a motion to reopen "on the basis articulated in the decision" and "may not assume that the [BIA] considered factors that it failed to mention in its opinion." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004). This requires that the BIA decision "build a rational bridge between the record and the agency's legal conclusion." *Mirza v. Gonzales*, 148 F. App'x 467, 469 (6th Cir. 2005) (quoting *Mengistu v. Ashcroft*, 355 F.3d 1044, 1047 (7th Cir. 2004)).

## III. ANALYSIS

An applicant for asylum and withholding of removal must file a motion to reopen within 90 days of the entry of a final judgment and is limited to a single motion to reopen. 8 C.F.R. § 1003.2 (c)(2). The 90-day filing deadline and the number-bar for asylum applicants are both waived only for "changed country conditions arising in the country . . . to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a (c)(7)(C)(ii); 8 C.F.R. § 1003.2 (c)(3)(ii). To prove changed country conditions, an applicant "must offer reasonably specific information showing a real threat of individual persecution." *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (quoting *Dokic v. INS*, No. 92-3592, 1993 WL 265166, *5 (6th Cir. July 15, 1993)). Absent satisfaction of the requirements for waiver, a late or number-barred motion to reopen will be denied.

Sidi Mohamed makes three claims in his petition for review: (1) the BIA abused its discretion in failing to waive the 90-day filing deadline and the number-bar for motions to reopen on account of changed country conditions in Mauritania; (2) the BIA abused its discretion in failing to reconsider his allegations that he will be mistreated for his anti-slavery activities; and (3) the BIA

-4-

abused its discretion in failing to address his CAT claim. We address each claim separately and find that all three fail.

## A. Waiver for Motion to Reopen

In 2008, there was a military coup in Mauritania. In 2012, Sidi Mohamed appealed to the BIA on the grounds that this coup changed the situation in Mauritania for anti-slavery advocates and that, as a result, he is now sufficiently likely to succeed on his asylum claim to merit waiver of the filing deadline and number-bar. After reviewing new documents submitted by Sidi Mohamed, the BIA rejected this argument, finding that there has not been a material change in circumstances for anti-slavery advocates in Mauritania.

Although the BIA does not apply the Federal Rules of Evidence, it must provide due process, including considering the reliability of documents. *Alexandrov v. Gonzales*, 442 F.3d 395, 404–05 (6th Cir. 2006). The BIA has broad discretion when considering the credibility of documents; however, documents should not be held to an "arbitrarily high threshold" when evaluating their reliability. *Zhang*, 702 F.3d at 881–82. "[A]bsent any evidence of falsity, the unsworn nature of a document relied on provides no basis to refuse to credit it." *Id.* Moreover, submitted documents must be given more than perfunctory mention by the BIA. *See Poradisova v. Gonzales*, 420 F.3d 70, 82 (2d Cir. 2005).

Here, the BIA found that the documents submitted by Sidi Mohamed were not persuasive evidence of changed country conditions. Sidi Mohamed argues that in reaching this conclusion, the BIA abused its discretion in its evaluation of the credibility of his 2012 affidavit, a letter from the SOS Slavery lawyer, and the 2012 arrest warrant. The BIA reviewed each of the documents in turn, and so do we, beginning with the 2012 affidavit.

The BIA stated that Sidi Mohamed's 2012 affidavit was speculative and not based, at least in part, on personal knowledge. Sidi Mohamed argues that his affidavit explained how he knew the included information and that it was based partially on personal knowledge. Hearsay is allowed in immigration proceedings, though it may render a document unreliable, particularly if the document includes multiple levels of hearsay. *Alexandrov*, 442 F.3d at 405–06. In addition, a "motion to reopen based on changed country conditions cannot rely on speculative conclusions . . . ." *Harchenko*, 379 F.3d at 410 (internal quotation marks omitted). The BIA may consider personal knowledge, including the degree of such knowledge, as a factor in determining the reliability of an affidavit. *See Fang Huang v. Mukasey*, 523 F.3d 640, 652-53 (6th Cir. 2008) (discussing approvingly the factors used in *Matter of C-C-*, 23 I. & N. Dec. 899 (BIA 2006), to evaluate the reliability of an affidavit, including personal knowledge).

Here, all of the accounts in Sidi Mohamed's 2012 affidavit were retellings of information from others, who in some cases also did not have personal knowledge. The affidavit was based on hearsay, some of which was multiple hearsay, and included speculations regarding future harm. The BIA acted within its discretion in not considering the affidavit to be persuasive evidence.

Regarding the SOS lawyer letter, Sidi Mohamed challenges the BIA's observation that the SOS lawyer is an interested witness. While the BIA may give less weight to documents and evidence from family and friends, *see Qin Wen Zheng v. Gonzales*, 500 F.3d 143, 149 (2d Cir. 2007), in some cases, even letters from friends and family must be given full weight, *see Zavala–Bonilla v. INS*, 730 F.2d 562, 565, 567 (9th Cir.1984) (directing that unsworn letters from friends and co-union members be fully considered). In addition, a client's lawyer is potentially an

interested witness, but that does not necessarily disqualify the lawyer from testifying. *See* Model Rules of Prof'l Conduct R. 3.7(a) & comment 1 (2011).

While the letter addressed to Sidi Mohamed refers to SOS as "your organization" of which "you are a member," there is no evidence that Sidi Mohamed and the SOS lawyer are friends or that he is the lawyer's client. The fact that the SOS lawyer provided documents requested by Sidi Mohamed, without more, does not provide an adequate basis for the lawyer to be treated as an interested witness. The BIA should not have concluded that the SOS lawyer was an interested witness. However, given that there were other grounds for discounting the letter, this error alone does not require us to grant the petition.

Sidi Mohamed also contends that the BIA abused its discretion by discounting the letter for failing to explain how the lawyer obtained the arrest warrant. Sidi Mohamed argues that it should be assumed that the lawyer received the warrant in the normal course of his legal work. However, it was not unreasonable for the BIA to question how the SOS lawyer—who describes his organization as illegal and who states that members of that organization are arrested, tortured, and killed—would be able to obtain an arrest warrant without himself being under threat.

Sidi Mohamed further argues that the mere fact that the letter was a photocopy is an insufficient basis for discounting its reliability. He correctly notes that the BIA Practice Manual "strongly recommends that parties submit copies of supporting documents, not originals, unless instructed otherwise." BIA Practice Manual § 3.3(d)(iv). The Practice Manual explains that "[p]arties should retain original documents in the event that an Immigration Judge or the Board requests them at a later date." *Id*. The recommendation that the parties use photocopies is directed

at situations where the applicant has the original. Thus, the use of photocopies is neither always required nor prohibited.

Given that the BIA looked to numerous factors concerning the letter, the BIA did not abuse its discretion by determining that the letter was not persuasive evidence of changed conditions. Moreover, given the similarities between the information in the letter and the evidence in the 2004 asylum hearing, discussed below, Sidi Mohamed had a particularly heavy burden to establish that the letter was both material and persuasive evidence.

Turning to the arrest warrant, Sidi Mohamed argues that the BIA abused its discretion in determining that the warrant was unauthenticated. The BIA has discretion to reject a document "not . . . authenticated in accordance with regulations if there are no convincing indications of the document's authenticity." *Chen v. Holder*, 397 F. App'x 111, 117 (6th Cir. 2010). A document's context, including the type of document and its origin, is relevant to determining what is needed to establish its reliability. *See Zhang,* 702 F.3d at 881-82. In *Zhang*, we reversed a BIA decision to discredit personal letters for not being notarized, finding a requirement that letters documenting persecution of Chinese Christians must be notarized in China to be an "arbitrarily high threshold." *Id*.

Here, the arrest warrant was not authenticated in accordance with 8 C.F.R. § 287.6. Given that proper authentication would require cooperation by the Mauritanian government, the alleged persecutor, the lack of authentication cannot alone discredit the document. It can, however, be some evidence of reliability. An arrest warrant is an official document, unlike the letters at issue in *Zhang*, and the BIA was within its discretion to consider the lack of authentication as a factor impacting credibility. It was also within its discretion not to consider the SOS lawyer letter a convincing

indication of the arrest warrant's authenticity, in light of its determination regarding the credibility of that letter.

The BIA also gave less weight to the arrest warrant because it was a photocopy and did not have an envelope. Envelopes support the reliability of submitted documents because they substantiate the claimed origin. *See Shire v. Ashcroft*, 388 F.3d 1288, 1299 (9th Cir. 2004). Here, we do not find the weight given by the BIA to the warrant to be improper because the arrest warrant, along with the SOS lawyer letter, arrived in an email, the origins of which were in question.

However, the BIA's concern that the warrant did not state what would happen upon arrest is inapposite. Nonetheless, in light of all of the factors addressed by the BIA, the BIA did not abuse its discretion in determining that the arrest warrant was not persuasive evidence of changed country conditions.

After reviewing the documents, the BIA addressed the essential issue for granting waiver of the time deadline and number-bar and allowing Sidi Mohamed's motion to reopen—whether there has been a change in country conditions for anti-slavery advocates. The BIA found that the evidence submitted did not establish such a change. Sidi Mohamed challenges this conclusion.

A change in conditions must be material to an asylum claim in order to permit a waiver of the 90-day filing deadline and the number-bar. 8 U.S.C. § 1229a(c)(7)(C)(ii); *see Moosa v. Holder,* 644 F.3d 380, 385 (7th Cir. 2011). The applicant "must show how the changes affect in some way his eligibility for asylum." *Hyzoti*, 517 F. App'x at 3; *see Moosa,* 644 F.3d at 385. In 2011, we denied Sidi Mohamed's petition for review because his evidence did not demonstrate that the 2008 coup created an individualized risk. *Mohamed*, 443 F. App'x at 967–68. In the present petition, Sidi Mohamed argues that new evidence demonstrates such an individualized risk and that this is a

material change from 2004, as the alleged threat in the initial asylum hearing was not individualized to anti-slavery advocates.

The 2004 hearing record, however, demonstrates that Sidi Mohamed at that time sought to establish a threat to anti-slavery advocates generally and himself specifically. In that hearing, he testified that he had been arrested and beaten in Mauritania on account of his anti-slavery activities. He added that in 2002 the SOS Slavery office was attacked by the government and the people there arrested. He provided letters from friends stating that his fellow activists had been arrested, that there was an arrest warrant for him, and that he specifically was in danger because the authorities were looking for him. News articles and State Department and non-governmental organization reports submitted by Sidi Mohamed at the hearing demonstrated the suppression of political opposition by arrests and torture, particularly as to black activists. Similar evidence was submitted in 2012, including an account of a 2012 government raid on the SOS Slavery office, a 2012 arrest warrant, and a letter telling him that he is in danger, along with news stories, and State Department and non-governmental organization reports demonstrating a threat to political activists, including to anti-slavery advocates. In his brief, Sidi Mohamed notes that the current threat of torture is general to all detainees.

In both 2004 and 2012, Sidi Mohamed submitted similar evidence to support his argument that the generalized threat to anti-slavery activists and the individualized threat to him establish the threat of future persecution. Even if all of Sidi Mohamed's new evidence had been fully credible, the arguments and the evidence submitted in support of his contentions do not describe materially different conditions for him or for anti-slavery advocates than those previously found to be insufficient. The BIA was within its discretion in finding that the conditions for anti-slavery

advocates had not materially changed since 2004. It was thus also within its discretion in finding that Sidi Mohamed failed to establish that the harm he fears rises to the level of persecution.

**B. Past Persecution and False Testimony**

After finding conditions had not materially changed, the BIA stated that it would not reconsider Sidi Mohamed's allegations that he will be mistreated for his prior anti-slavery activities. It noted that in 2004 the IJ found Sidi Mohamed failed to establish past persecution on account of anti-slavery activities and SOS Slavery membership, and that in 2006 the IJ found Sidi Mohamed had provided false testimony. Sidi Mohamed claims the BIA erred in considering both of these IJ findings and by not considering his past mistreatment in determining the risk of future persecution.

Sidi Mohamed has no basis for challenging the BIA's failure to consider whether he will be mistreated in the future. Once the BIA found that there was no material change in country conditions, his entire motion to reopen failed as time and number-barred. Sidi Mohamed was denied asylum in 2004 for his claims of past persecution and fear of future persecution. Given that there has been no material change in country conditions, the allegations of past mistreatment are no more effective at demonstrating future persecution now than in the prior hearing. To continue an inquiry after a finding of no material change in country conditions would be an improper reconsideration of the IJ's denial of asylum and withholding of removal.

As noted by the BIA in its denial of the current motion, "a motion to reopen is not an opportunity to repeat previously considered and rejected arguments . . . ." AR. 3 (citing *INS v. Wang*, 450 U.S. 139, 141 (1981)). In 2011, we considered Sidi Mohamed's petitions for review of the BIA's final removal order based on the IJ's denial of asylum and withholding of removal and for review of the BIA's denial of voluntary departure, which included the IJ's finding that he gave

-11-

false testimony. We held that we lacked jurisdiction to review both petitions. *Mohamed*, 443 F. App'x at 967. Sidi Mohamed did not further appeal the adverse credibility finding. We still lack jurisdiction over the order of removal as the 30-day filing deadline has long since past. 8 U.S.C. § 1252(b)(1). We also lack jurisdiction over the IJ's adverse credibility determination as it was not appealed in the motion to reopen at issue.

We do have jurisdiction to consider whether the BIA abused its discretion in considering the prior adverse credibility determination. In the decision denying voluntary removal, the IJ found that Sidi Mohamed provided false testimony as a matter of fact by providing different facts about what country he lived in between 1990 and 1996 on separate sworn immigration documents. The BIA did not abuse its discretion in considering that finding as it may consider prior adverse credibility findings in future proceedings when weighing evidence. *Zhang v. Mukasey*, 543 F.3d 851, 855 (6th Cir. 2008) (affirming the BIA's use of a prior determination that applicant had submitted fraudulent documents in evaluating the credibility of subsequent evidence).

## C. CAT Claims

Sidi Mohamed claims that the BIA decision was an abuse of discretion because it failed to address his motion to reopen his withholding of removal claim under CAT. He is incorrect. The BIA did address his CAT claim when it stated that the motion to reopen included reopening the withholding of removal claim. Referring to the time limit and number-bar waiver for change of conditions with regard to asylum claims, the BIA cited 8 C.F.R. § 1003.2, which provides that the waiver applies to both asylum claims and withholding of removal claims. The BIA concluded by denying the reopening of "proceedings" rather than just the asylum claim. Moreover, the burden of proof under CAT is higher than for asylum. 8 C.F.R. § 1208.16(c)(2). Sidi Mohamed's failure

to establish a material change in country conditions resolved his motion to reopen for asylum and for CAT relief. *See Sarr v. Gonzales*, 485 F.3d 354, 362 (6th Cir. 2007).

## IV. CONCLUSION

For the forgoing reasons we DENY the petition.