**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0148n.06

No. 17-3672

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|                                                      |   |
| ---------------------------------------------------- | - |
| AMADOU SOW,                                          | ) |
|                                                      | ) |
|    Petitioner,                        | ) |
|                                                      | ) |
|    v.                                 | ) |
|                                                      | ) |
| JEFFERSON B. SESSIONS, III, Attorney General,        | ) |
|                                                      | ) |
|    Respondent.                        | ) |
|                                                      | ) |
|                                                      | ) |

**FILED**
Mar 21, 2018
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

BEFORE: MERRITT and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

CLELAND, District Judge. Amadou Sow petitions this court for review of the Board of Immigration Appeals' order denying his motion to reopen his asylum proceedings. Because the Board's decision was not an abuse of discretion, we deny the petition.

I.

Petitioner Sow is a native and citizen of Mauritania, an African nation. Following the expiration of his tourism visa, Sow requested asylum, 8 U.S.C. § 1158(a), withholding of removal, 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture. 1465 U.N.T.S. 85, G.A. Res. 39/46, 39th Sess., U.N. GA OR Supp. No. 51, at 197, U.N. Dopc. A/39/51 (1984). Sow failed to appear at his asylum interview and the Department of Homeland Security commenced removal proceedings. *See* U.S.C. § 1227(a)(1)(B); (A.R. 760.)

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

At his removal hearing in July of 2010, Sow testified to suffering persecution in his home country due to his ethnicity and political activities. *See Sow v. Holder*, 518 F. App'x 447, 448 (6th Cir. 2013). Specifically, Sow explained that he joined a political organization known as the Union of Democratic Forces ("UFD") in Mauritania in 1992. *Id.* The UDF opposed the then-leader of Mauritania, President Maaoya Ould Taya. *Id.* Sow alleged that during a protest, armed police (the "Moors") arrived, threw tear gas into the gathering, and arrested him. *Id.* The police allegedly detained him for seventy-two hours in a windowless cell with seven others. Sow testified that police interrogated him at three o'clock every morning, punched him on his right hand, called him a "nigger," burned his hand with candles, injured his knees by making him crawl, beat his back with a truncheon, and stepped on his back. *Id.* After his release, Sow continued to participate with the UFD, and police continued to summon him to the station. *Id.* They never again physically harmed him, but they allegedly threatened him, called him names, and detained him for eight to twelve hours at a time. *Id.* Sow averred that this treatment lasted from 1992 until he left Mauritania to come to the United States in 2001. *Id.*

Sow further testified that after he left Mauritania, the police continued to return to his residence and question his wife regarding his whereabouts. *Id.* Sow avowed that he could not return to Mauritania because of his problems with the police and the government related to his political activities. *Id.* If he returned, he intended to continue to participate in the UFD and oppose the government, which he insisted would result in continued harassment by the police. *Id.* at 448–49.

In support of his claims, Sow submitted, among other evidence, his UFD membership card and a letter from the regional president of the UFD describing Sow's alleged persecution. *Id.* at 449. Cross-examination revealed several significant inconsistencies between Sow's

testimony and his proffered evidence, leading the immigration judge ("IJ") to conclude Sow's claim of political persecution was not credible. *Id.* Consequently the IJ denied Sow's applications, and ordered him removed to Mauritania; however, "she also noted that if she had found him credible, she would have granted him asylum due to his past persecution and a well-founded fear of future persecution." *Id.* Specifically, the IJ stated in her oral order:

> The Court will make an alternative holding in this case in the event a higher Court disagrees with the credibility determination. The Court would find that if the respondent had been found credible and persuasive, the Court would have granted asylum based on past persecution on account of political opinion, race and membership in a particular social group.
>
> . . .
>
> The Court agrees with respondent's counsel that there is ample evidence of ongoing ethnic and political problems in Mauritania as outline[d] both in the 2009 Country Report, as well as the numerous articles at Exhibit 5. Therefore, had the respondent been found credible, this Court would have granted asylum based on a finding of past persecution on account of a protected ground, and the Court would not have found that rebuttable presumption of well-founded fear to be rebutted.

(A.R. 173–74).

The Board of Immigration Appeals ("BIA" or "Board") sustained the immigration judge's order on the basis of her adverse credibility-finding, and this court subsequently denied Sow's petition for review in 2013. *Sow*, 518 F. App'x at 449–50. (A.R. 76–77).

In March 2017, Sow moved to reopen proceedings before the BIA due to "a change in country conditions." (A.R. 10, 14). Sow learned in 2016 that the Mauritania National Police issued an arrest warrant for him in February 2012—more than ten years after he left Mauritania—"for organizing a non-authorized Manifest, rebellion and for verbally pronouncing racist comments toward the [Moors] authorities." (A.R. 14, 18). According to Sow, this new warrant "is a clear signal that the country has changed its priorities and is actively pursuing old

enemies, or people it perceives as enemies" and thus supports "an independent claim of a well

founded fear of future persecution." (A.R. 14–15).

The BIA denied Sow's motion on May 24, 2017, reasoning for our purposes as follows:

> [T]he arrest warrant does not reflect a material change in conditions in Mauritania since the respondent's hearing in 2010 because the respondent's prior political asylum claim was based, in part, on prior arrests and a fear of future arrests. Although not dispositive to our decision, we also find the respondent's self-serving statements and the arrest warrant unpersuasive as they are meant to bolster the respondent's prior political asylum claim, which was largely denied due to the respondent's incredible testimony. Consequently, the respondent has not demonstrated a material change in circumstances or conditions in Mauritania[.]

(A.R. 4) (internal citations omitted). Sow now petitions this court for review of the BIA's order.

II.

We review the BIA's denial of a motion to reopen for abuse of discretion. *Bi Feng Liu v.

Holder*, 560 F.3d 485, 489 (6th Cir. 2009). Motions to reopen asylum proceedings are

"disfavored," and the BIA has "broad discretion" in deciding whether to grant them. *INS v.

Doherty*, 502 U.S. 314, 323 (1992) (citation omitted). To reverse under this deferential standard,

we "must possess a definite and firm conviction that the court below committed a clear error of

judgment in the conclusion it reached upon a weighing of the relevant factors." *Sako v.

Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (internal quotation omitted). We "will find an

abuse of discretion if the denial of the motion to reopen 'was made without a rational

explanation, inexplicably departed from established policies, or rested on an impermissible basis

such as invidious discrimination against a particular race or group.'" *Bi Feng Liu*, 560 F.3d at

490 (citation omitted).

III.

Because Sow filed his motion to reopen more than ninety days after the date of entry of his removal order, it was untimely. *See* 8 U.S.C. § 1229a(c)(7)(A), (C)(i). However, the 90-day limit does not apply if Sow can show "changed country conditions" arising in the country of removal, using evidence that is "material and was not available and would not have been discovered or presented at the previous proceeding." § 1229a(c)(7)(C)(ii). In reviewing a document presented as evidence in support of a motion to reopen, the BIA may consider "the type of document and its origin" to establish its reliability. *See Mohamed v. Holder*, 542 F. App'x 446, 451 (6th Cir. 2013) (citing *Zhang v. Holder*, 702 F.3d 878, 881–82 (6th Cir. 2012)).

Importantly, "a change in personal circumstances that is unaccompanied by a change in country conditions is insufficient to reopen proceedings." *Zhang*, 702 F.3d at 879–80. Likewise, a change in conditions in a petitioner's home country alone is insufficient to warrant reopening— the change must be material to his situation. 8 U.S.C. § 1229a(c)(7)(C)(ii). The petitioner therefore must demonstrate the change affects his eligibility for asylum. *See Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011). "Because the BIA has such broad discretion, a party seeking reopening or reconsideration bears a heavy burden." *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) (internal quotation omitted).

IV.

The BIA found the 2012 arrest warrant was not material, persuasive evidence reflecting a change in country conditions, and we agree.

The record in this case is quite explicit as to what the conditions in Mauritania were at the time of Sow's applications—he feared political persecution by the Mauritanian police. As but one example, consider Sow's responses to the IJ's line of questioning about what would happen

to Sow if he returned to Mauritania during his 2010 hearing. He testified that he had, and would continue to have, "a problem with the police, which means . . . a problem with the government. . . . When I go back, I will not stop my involvement with the UFD, that means the police [are] not going to leave me alone. They're going to continue to harass me and take me." (A.R. 251–52). And this fear was substantiated: after he left Mauritania, the "police kept coming to [his] house," "many times asking for [him]," (A.R. 250) and two of his UFD friends were arrested at UFD political meetings. (A.R. 258–62). The IJ explicitly concluded that there were ongoing ethnic and political problems in Mauritania in 2010. (A.R. 173). The 2012 arrest warrant only confirms the state of affairs in Mauritania. Petitioner has failed to meet his burden to reopen his case. *Zhang*, 702 F.3d at 879–80; *see also Ahmed v. Holder*, 495 F. App'x 605, 609 (6th Cir. 2012) (per curiam) (holding that evidence of changes in personal circumstances, without a change in country conditions in Mauritania, was insufficient to reopen asylum application).

While styled as a "change on country conditions" argument under 8 U.S.C. § 1229a(c)(7)(C)(ii), Sow's petition appears to challenge the IJ's original finding of adverse credibility. Sow argues that the 2012 arrest warrant proves that his 2010 claims of political persecution were, and remain, credible. Having already appealed the IJ's original determination to the BIA and to this court, a challenge to the IJ's credibility finding is long overdue and is not proper in the context of the present motion. Moreover, the BIA found the 2012 arrest warrant unpersuasive and concluded that it was "meant to bolster the respondent's prior political asylum claim, which was largely denied due to the respondent's incredible testimony." (A.R. 4). The BIA did not abuse its discretion in making this determination. *See, e.g.*, *Zhang v. Mukasey*, 543 F.3d 851, 852 (6th Cir. 2008) (holding that the BIA did not abuse its discretion when considering prior adverse credibility findings when evaluating petitioner's motion to reopen);

*Mohamed*, 542 F. App'x at 451 (holding that the BIA could consider prior adverse credibility findings in future proceedings when weighing evidence presented by the petitioner opposing removal to Mauritania). Based on this record and our deferential standard of review, the BIA did not abuse its discretion in concluding that "the arrest warrant [did] not reflect a material change in conditions in Mauritania since [Sow]'s hearing in 2010 because [Sow]'s prior political asylum claim was based, in part, on prior arrests and a fear of future arrests." (A.R. 4).

V.

For the foregoing reasons, the petition for review is denied.